# REPORTS OF CASES

## DETERMINED IN

# THE SUPREME COURT

### OF THE

## STATE OF NEVADA.

## JANUARY TERM, 1876.

---

[No. 743.]

## STATE OF NEVADA, RESPONDENT, v. CHARLES HUFF, APPELLANT.

INDICTMENT—WHEN DEFECTIVE.—An indictment for murder which fails to show that the death occurred within a year and a day after the perpetration of the act which produced it, fails to state the requisite facts to constitute a complete offense.

IDEM--OBJECTIONS TO FORM WAIVED BY FAILURE TO DEMUR.—*Held*, that the defect, above stated, was waived by the failure of defendant to demur to the indictment.

IDEM—ALLEGATION OF KILLING.—When it is alleged that the defendant, on a certain day and year, etc., "killed" the deceased, it is to be implied that the act which produced the death and the death occurred on the same day.

BILL OF EXCEPTIONS—HOW AUTHENTICATED.—A bill of exceptions must be authenticated by the signature of the judge.

IDEM--SETTLEMENT OF, ON MOTION FOR NEW TRIAL.—The bill of exceptions, or statement, may be settled by the judge after the motion for a new trial is decided. (*By Beatty, J.*)

VERDICT CONTRARY TO EVIDENCE.—A verdict in a criminal case will not be reversed where there is any evidence to support it.

CROSS-EXAMINATION OF DEFENDANT.—When a defendant in a criminal case offers himself as a witness in his own behalf he subjects himself to the same cross-examination that would be proper in the case of any other witness.

IDEM.—Questions may be asked the witness which relate to his conduct and legitimately affect his credit for veracity. The defendant may, however, refuse to answer such questions.

VOL. XI.—2

Idem—Frequent Assaults and Batteries.—No legitimate inference of the untruthfulness of a witness can be drawn from the fact that he has been convicted of frequent assaults and batteries. It could be inferred that he was a violent-tempered and perhaps a dangerous man, but not that he was a liar.

Error—When Prejudicial.—*Held*, that the defendant was prejudiced by being compelled to answer questions addressed to him in relation to his conviction of former assaults and batteries.

Appeal from the District Court of the First Judicial District, Storey County.

Defendant was indicted for the murder of William Patrick O'Reilly, convicted of murder in the second degree and sentenced to imprisonment in the state prison at hard labor for the term of twenty years.

The facts are stated in the opinion.

*De Long & Belknap*, for Appellant.

I. The indictment is fatally defective in failing to charge that the death occurred within a year and a day after the wound was given, and in failing to state in *what year* the injury was given or the death occurred. (*People* v. *Aro*, 6 Cal. 209; *People* v. *Kelly*, Id. 212; *Commonwealth* v. *Griffin*, 3 Cush. 525; Wharton on Homicide, par. 789; 1 Bishop on Crim. Proc., secs. 237–239, 243–244; 1 Chitty Cr. Law, 222; Compiled Laws, secs. 1859, 1860; 3 Chitty Crim. Law, 736; *State* v. *Conley*, 39 Maine, 94; Moor, 555; *State* v. *Curtis Orrell*, 1 Dev. Law (N. C.) 139; 2 Hale's Pleas of the Crown, 179.)

II. The court erred in permitting the prosecution to prove the general and specific bad character of the defendant, when the defendant had not put his character either specifically or generally in issue. (1 Bishop on Crim. Proc., sec. 488; *People* v. *White*, 14 Wend. 111; 3 Greenl. on Ev., sec. 25; 2 Russell on Crimes, sec. 786; 15 N. H. 169; 18 Ohio, 221; 5 Gratt. 696; *Griffin* v. *The State*, 14 Ohio St. 63; *People* v. *White*, 14 Wend. 111; *Taylor* v. *Commonwealth*, 3 Bush (Ky.) 511; *Gale* v. *The People*, 26 Mich. 158; *People* v. *Jones*, 31 Cal. 565; *State* v. *Fair*, 43 Cal. 138; 14 Wend. (above cited); Bishop on Crim. Proc., sec. 490.)

*J. R. Kittrell, Attorney-General,* for Respondent.

I. The insufficiency of an indictment should be taken advantage of by demurrer, and the question of its insufficiency cannot for the first time be raised in the appellate court. (1 Comp. Laws, sec. 1910; *People* v. *Josephs,* 7 Cal. 129; *People* v. *Apple,* Id. 289; *State* v. *Harrington,* 9 Nev. 94; *State* v. *O'Flaherty,* 7 Id. 153; *People* v. *Jim Ti,* 32 Cal. 60; *People* v. *Farrell,* 31 Id. 576.)

II. The omission in the indictment to specify the *year* of the commission of the offense is a mere *formal defect* by which no substantial right of the defendant was affected at the date of the trial, nor can now be affected. (*People* v. *Dick,* 37 Cal. 277; *People* v. *Murphy,* 39 Cal. 55.)

To test the credibility of defendant, or for purposes of impeachment, it was entirely competent for the district attorney to ask him whether he had been guilty of past crimes and offenses or not. The questions asked of defendant were not propounded with a view to impeach his character, but simply that the answers thereto might affect his credibility. As such they were admissible, and in all respects proper. (1 Greenl., sec. 450; *Newcomb* v. *Griswold,* 24 N.Y. 298; *People* v. *Reinhart,* 39 Cal. 449; *Clark* v. *Huse,* 35 Cal. 96; *People* v. *Cronin,* 34 Cal. 205; *Tom Jones's Case,* 2 Wheeler's Crim. Cases, 461.)

By the Court, BEATTY, J.:

The defendant was convicted of murder in the second degree, upon an indictment which (omitting the formal beginning and ending) reads as follows: "Charles Huff, the above-named defendant, is accused by the grand jury of the county of Storey, by this indictment, of the crime of murder, committed as follows: That Charles Huff, the defendant above named, in the county of Storey, state of Nevada, on or about the thirtieth day of June, and prior to the finding of this indictment, without authority of law, unlawfully and with malice aforethought, stabbed with a knife in the hands of him, said defendant, and killed one William Patrick O'Reilley.

No objection was taken to the sufficiency of this indictment in the court below, and the defendant, on his appeal to this court, for the first time makes the point that it is fatally defective on its face because, first, it does not show in what year the offense was committed; and second, it does not show that death ensued within a year and a day after the wound was inflicted.

If the second of these propositions is untenable the first clearly is; for the indictment does show that the offense charged was committed before the finding of the indictment; and as the particular year in which it was committed does not affect the question of jurisdiction, and is not one of the facts necessary to constitute the offense, the objection to the defect was waived by the failure of the defendant to demur. (Compiled Laws, secs. 1910, 1918.)

Section 1863 of the compiled laws shows that the allegation as to the precise time when an offense was committed, is treated as a merely formal allegation except when time is a material ingredient of the offense. This is conceded by counsel, but it is argued that time is a material ingredient of murder, and the language of section 2329 of the compiled laws is relied upon in support of the proposition. "In order to make the killing either murder or manslaughter, it is requisite that the party die within a year and a day after the stroke received or the cause of death administered," etc. The literal import of this language does lend some countenance to, the notion that the law is guilty of the absurdity of saying that a malicious killing shall be deemed a harmless or a guilty act according to the length of time the victim survives after receiving the fatal wound. But knowing what the rule of law which the statute recognizes and affirms has always been, we are able to acquit it of such absurdity. It is a rule of evidence merely. Knowing that the real cause of death must be more or less doubtful in all cases where a wound has not proved speedily fatal, the law has wisely set a limit to that inquiry, and has determined that when a wounded party has survived the wound a year and a day, there shall be a conclusive presumption that he died from some other cause. It does not say: "Notwith-

·standing you killed him with malice aforethought you are deemed innocent because he lived a year and a day after you stabbed him;" but what it does say is: "He lived so long after you stabbed him, I therefore conclude you did not kill him;" or rather, "It is so doubtful in such cases what was the cause of death, that upon grounds of public policy I have determined never to permit the attempt to show that the wound was the cause."

This is the true meaning of the statute, although its more obvious meaning is something different. But taking this construction, it may still be urged that the time elapsing between the injury inflicted and the death is an ingredient of the crime of murder; for if the ingredients of murder are the killing and the malice prepense, and the time is an ingredient of the killing, it must be an ingredient of the murder. This is true in a certain sense, but our statutes permit the allegation of the killing to be made in one word: the defendant killed; and the allegation of the killing is an allegation of every necessary ingredient of killing. It implies everything that was expressly alleged in the old formal indictments in regard to the infliction of the wound and the resulting death. It is no longer a question in this state, or at least in this court, that the legislature has the power to dispense with those formalities of allegation. As to the meaning of the year and a day rule, see 3 Greenl. Ev., sec. 120 and note; 1 Devereux (N. C.) 139, 141; 3 Coke Inst. 53; 39 Cal. 55; 4 Nev. 274; and see *People* v. *Cronin,* 34 Cal. 191.

It may be asked, what is the meaning of time being an ingredient of an offense? It means that there are acts which are criminal if done at one time and innocent if done at another. All purely statutory offenses are instances of this, and it is necessary for the indictment to show that they were committed after the passage of the law defining and punishing them.

Finally, it may be said with respect to this particular case, and it would be a sufficient answer to appellant's objection if there was no other, that the indictment does show by fair and reasonable intendment that O'Reilley was stabbed

and died on the same day. It says that defendant stabbed him on that day and killed him on that day, therefore he must have died on that day. The evidence, we believe, shows that he did not die until the next day; but this was an unimportant variance; and the question is as to the sufficiency of the allegation, not as to the conformity of the proof.

The next error relied on by appellant is, that the court permitted improper questions to be asked him on cross-examination when he offered himself as a witness, and compelled him to answer them to his prejudice.

It has been a matter of serious doubt with the court whether this point is presented by the record. The judge of the district court has signed a bill of exceptions, which, by reference merely, makes the reporter's notes of the evidence and the rulings of the court during the trial a part of itself, and the clerk has copied into the transcript what purports to be the reporter's notes; but they are not identified or authenticated in any manner, and there is nothing to show that they are the notes referred to by the bill of exceptions. They do not appear even to have been filed in the clerk's office, and for all we know, may have been concocted after the bill of exceptions was signed. Upon consideration, however, we have concluded, as the state has made no objection to the evidence being treated as part of the bill of exceptions, and as it has come to our knowledge that the original record has been destroyed by fire, not to raise this objection ourselves, and we mention the condition of this record merely to direct attention to what we consider a bad practice, if it is a practice, of making other loose documents and papers part of a bill of exceptions by reference. A bill of exceptions is a record, and a very important record. The only mode by which it can be authenticated is the signature of the judge; and when so authenticated, it receives a very high degree of credit. It ought not therefore to be composed of loose and scattered papers, but should be complete in itself, with a formal beginning and ending, so that it may be known where it begins and where it ends when it is copied into a transcript on appeal. Above all, it should

not be left in a condition that puts in the power of other parties than the judge to alter it completely by the substitution of one loose unauthenticated paper for another.

The condition of this record also suggests the propriety of again directing attention to the provisions of section 424 of the criminal practice act. "The bill of exceptions shall contain so much of the evidence only as is necessary to present the question of law upon which the exceptions were taken, and the judge shall, upon the settlement of the bill, whether agreed to by the parties or not, strike out evidence and other matters not material to the questions to be raised." This transcript contains one hundred and eighty-three pages of the reporter's notes, of which at least one hundred and seventy-five are utterly superfluous so far as the points presented for review are concerned, which means that the county has been put to a worse than useless expense of probably not less than a hundred and fifty dollars, in order to cumber the transcript with so much rubbish. But the fault of this is not to be imputed to the counsel who prepared the bill of exceptions, or to the district judge who allowed it. It is due rather to a misconception or uncertainty as to the proper practice on motions for new trial, which has arisen in part at least from expressions inadvertently used by this court.

The misconception alluded to is the notion that the same preliminary steps are necessary in moving for a new trial in criminal cases that are prescribed in civil cases, and particularly that it is necessary to prepare and settle a statement or bill of exceptions in advance of the motion in order to authorize the district judge to consider the testimony which is to be relied on in support of it. In *Stanley's Case* (4 Nev. 76), this proposition is "conceded;" but it will be observed that the concession was made merely for the purposes of the argument in that opinion, and that the point was not so decided. It never has been so decided in this state, nor, according to our observation, in California. But the expression above adverted to, and perhaps some others that may be found in the Nevada reports, will always induce counsel in criminal cases to insist upon having the bill of

exceptions settled preliminary to the motion for new trial, for fear an order sustaining the motion might be reversed upon the ground that it was made without authority. The result is, that whenever one of the grounds of the motion is that the verdict is contrary to the evidence, as it was in this, and is in most cases, every particle of the evidence must go into the bill of exceptions, and must be brought here with the rest of the record, although in nine cases out of ten it is of no possible use for the purposes of the appeal, but on the contrary is a positive drawback.

As long, however, as the misconception referred to is allowed to prevail, we are satisfied it will be useless for this court to repeat its admonitions to district judges to pay stricter attention to the provisions of section four hundred and twenty-four, as above quoted; for if they ought to understand and enforce those provisions without, and even against, the advice of counsel, as their terms imply, certainly this court ought to be able to do as much; and such being the presumption, any intimation of our opinion upon points of practice necessarily related to the construction of that section will have all the force, practically, of a decision. For this reason we desire to call attention to the fact that this court has not decided that a statement or bill of exceptions must be settled before the motion for new trial is made. We think, on the contrary, that a comparison of all the provisions of the practice act as to the time when the motion for new trial must be made, and the time allowed for settling the formal bill of exceptions which is to become a part of the record of the case, will clearly show that the statute contemplates that in all cases the bill of exceptions may, and in many cases it must, be settled after the motion for new trial is decided. (Compare sections 429, 444, 445, 436, 450, 423.)

If it be asked upon what would the judge act if he had no settled bill of exceptions before him, we answer, he acts upon affidavits so far as they are necessary to present the grounds of the motion, and, for the rest, upon his own observation and recollection of the occurrences of the trial, including the exceptions noted. The record of the trial,

according to the old books, is in the breast of the judge during the term, and a motion for a new trial in a criminal case is always made during the term.   For the purposes of the motion, therefore, the recollection of the judge is record enough of all that transpired within his observation, and which he can properly state in a bill of exceptions.   When the motion has been granted or refused, it is then the proper time to except to the order and to settle a bill of exceptions which will present those points only which are to be reviewed in the appellate court.   In fact, the only proper office of a formal bill of exceptions is to get the matter on the record for the purposes of review in the appellate court.

The advantages of following the practice here indicated would, we think, be manifold.   In the first place, if counsel were allowed ample time for the preparation of their bill of exceptions, they would satisfy themselves of the inutility of including many things which, when hurried, they put in by way of precaution merely.   It is easier and safer to dump in the whole proceedings of the trial, ore and waste together, than it is to assort and arrange in a hurry.   In the next place, the argument of the motion for new trial often develops many points of agreement between the prosecution and defense, and either leads to the abandonment of points, or renders it possible to present the law question on the record in the briefest possible terms.   But the most important saving would be effected when the ground, or one of the grounds, of the motion was, as in this case, that the verdict is against evidence.   When the motion was sustained upon that ground, it is to be presumed the state would seldom except; and when it was overruled, the point would be abandoned on the appeal in all cases where there was no pretense that the evidence for the state, considered by itself, did not make out a *prima facie* case.   It has been so often decided in this court, that it ought to be considered settled that we cannot reverse a judgment on the ground that the verdict is contrary to the evidence where there is any evidence to support it.   If the defendant should nevertheless insist upon presenting the point here, it would be sufficient to include in the record such testimony as in the opinion of

the judge tended to convict him, adding the statement that this was all the testimony which in any manner tended to establish the guilt of the defendant. This would present the simple question of law, whether the state had made out a *prima facie* case, and that is all we have jurisdiction to decide.

Returning from this digression to the matter in hand, we find that on the trial of this case, when the state rested, the defendant was sworn and testified in his own behalf. On his cross-examination he was asked: "How many times have you been arrested in Virginia City for unlawfully beating men and women?" His counsel objected to the question, but the court decided that the prosecution had the right to ask it, and defendant excepted to the ruling. The ground of the objection was not stated by counsel, but it clearly appears from the reporter's notes that the ruling of the court was not based upon that omission, but upon the ground that the question was a proper one. The question was then repeated, and the defendant answered: "Three times, I believe."

The examination then proceeded as follows:

Ques. Were you convicted each time?

Ans. Yes, sir. Plead guilty twice and was tried two times.

Ques. What was the name of that woman you were arrested for beating?

Ans. Katie Devine.

Ques. Was that one of the persons that you assaulted and was convicted of the offense?

Ans. I believe it was.

Ques. Do you know a Mr. Robey?

Ans. Who?

Ques. H. L. Robey?

Ans. Yes, sir.

Ques. You were arrested and charged with beating him and cutting off his beard?

Ans. I was.

Ques. And convicted?

Ans. I was.

Ques. Were you arrested for striking a man with a monkey wrench?

Ans. No.

Ques. You threw it at him though, and was convicted of assault and battery?

Ans. I was.

Ques. Have you ever been in the penitentiary in the state of Ohio?

Ans. No.

Ques. Did you ever kill a man there?

Ans. No.

Ques. Did you ever kill a man in any other state?

Ans. No; etc.

Counsel again objected to all these questions and his objection was again overruled, to which ruling he excepted.

The rulings of the district court in respect to these questions we think were erroneous and prejudicial to the defendant. It is not claimed that the matters in regard to which the defendant was examined could have been given in evidence against him; but it is contended that the questions were proper on cross-examination for the purpose of affecting his credibility as a witness.

It has been decided, and we think correctly decided, in this state (see *Cohn's Case*, 9 Nevada 179), that when a defendant in a criminal case offers himself as a witness in his own behalf he subjects himself to the same cross-examination that would be proper in the case of any other witness. We think, though, that the examination above quoted would have been improper in the case of any witness. The defendant had testified to nothing in chief to which it could be deemed responsive, and the only question is whether as a collateral inquiry it was permissible for the purpose of testing his veracity.

The rule in regard to this sort of cross-examination is, we think, very fairly and correctly stated in 24 New York Reports, 299. " In the latitude of cross-examination, and to enable the jury to understand the character of the witnesses they are called upon to believe, collateral evidence is al-

lowed from the witness himself, tending to discredit and disgrace the witness under examination. The witness may be privileged from answering; but the question may be put, and, if the witness waive his privilege, answered, if the answer relates to the conduct of the witness and legitimately affects his credit for veracity." We think this rule was violated in this case in allowing an examination in regard to matters not legitimately affecting the veracity of the witness. No legitimate inference of the untruthfulness of a witness can be drawn from the fact that he has been convicted of frequent assaults and batteries. It could be inferred that he was a violent-tempered and perhaps a dangerous man, but not that he was a liar. See 1 Greenl. Ev., sec. 458, to the effect that questions are not permissible, " the answers to which, though they may disgrace the witness in other respects, *yet will not affect the credit* due to his testimony;" the instance given in illustration being the question addressed so frequently to the female witness in the action for seduction, *per quod servilium amisit,* and on indictments for rape, whether she had not previously been criminal with other men, or with some particular person. The case of *Gale* v. *The People,* (26 Mich. 159) is exactly in point and fully sustains our conclusions. It also meets the point made here that this defendant might have refused to answer the questions. " If these questions were improper it must be apparent that the error was not cured by the instruction to the prisoner that he might decline to answer at his option. When the judge sustained the exceptions he decided in effect that they were proper to be put and answered; and had the prisoner declined to answer any of them, he would have been put in the position before the jury of coming upon the stand in his own exculpation, and then refusing to make his disclosure as full as the rules of law required. An unfavorable influence upon the minds of the jury must inevitably have been produced," etc.

In this case the defendant must necessarily have been prejudiced by a refusal to answer the questions addressed to him after the court decided they were proper, but he was not instructed that he had the privilege of refusing to

answer, and we cannot doubt that the answers he gave must have excited more or less prejudice against him in his character of defendant in the minds of the jurors who tried him. For this error of the court the judgment must be reversed and a new trial had.

It is so ordered.

EARLL, J., concurring:

I concur in the judgment and in what is said by Mr. Justice BEATTY in respect to the cross-examination of the defendant, and to the mode in which the bill of exceptions should be authenticated.

It is a common law rule that every indictment must allege a day and year certain on which the offense was committed, and I do not think the rule is modified by the statute beyond the form prescribed in section 235 of the act to regulate criminal proceedings; and am of opinion the statute requires a day and year to be stated, though the precise day need not be stated except when time is a material ingredient of the crime. But I concur in the opinion that the defect is waived unless objection thereto be taken by demurrer. I am also of opinion that an indictment for murder which fails to show that the death occurred within a year and a day after the perpetration of the act which produced it, fails to state the requisite facts to constitute a complete offense. But I concur in the opinion that, under the provisions of the statute, when it is alleged that the defendant, on a certain day and year, etc., "killed" the deceased, that it is to be implied that the act which produced the death, and the death, occurred on the same day.

With respect to the question of practice discussed by Mr. Justice BEATTY, I express no opinion, the question not having been raised or discussed by counsel on either side.

HAWLEY, C. J., concurring:

I concur in the judgment of reversal and in the views expressed by Mr. Justice EARLL.