By the Court,
Leonard, J.:
Appellant was convicted of the crime of murder of the first degree. He appeals from the judgment and the order overruling his motion for a new trial. The grounds of the motion were that the verdict was contrary to law and the evidence. We are urged to reverse the order and judgment on the sole ground that the evidence did not justify a verdict of murder of the first degree. The bill of exceptions proper presents no part of the evidence, and only contains the fact that after trial, appellant, by his counsel, filed his motion for a new trial, which was submitted without argument; that the court overruled the motion, and appellant *407 excepted. There is, however, in another part of the transcript, what is denominated “ statement of the evidence on appeal,” which is certified by the judge as being “ true and correct, and containing all the testimony in the case.” Counsel for the respective parties also agree that it is “correct.” The attorney-general insists that this statement of evidence cannot be considered by this court, for the reason that it is not embodied in the bill of exceptions, and is not any portion of the record. The statute is plain as to the method of procedure in the appeal of criminal cases, and this court has in several instances taken occasion to comment in plain terms upon the inexcusable inattention often manifested in making up transcripts. (State v. Huff, 11 Nev. 22; State v. Larkin, Id. 314; State v. Ah Mook, decided at last term.)
The statute does not make the evidence given in any criminal case a part of the record, and the only method of making it a part of the record is to embody it in a bill of exceptions. (Crim. Prac. Act, secs. 424 and 450.) So much of the evidence only as is necessary to present the question of law upon which the exceptions were taken should be embodied in the bill of exceptions, and any other evidence should be stricken out by the judge, whether agreed to by the parties or not. The bill containing the exceptions, and so much of the evidence as may be necessary, properly settled and signed by the judge, together with the rest of the record as provided by section 450, is all that this court can notice in the examination of a criminal case on appeal.
But should we consider the evidence contained in this transcript the same as if it had been embodied in the bill of exceptions, we should be unable to reverse the order and judgment of the court below, for these reasons:
This court cannot reverse a judgment in a criminal case on the ground that the verdict is contrary to the evidence, where there is any evidence to support it. When there is some evidence to support every fact necessary to make- the crime complete, a prima facie case is made out; and when that conclusion is reached, we have no jurisdiction to look *408 beyond and decide as to the weight or preponderance of evidence. (State v. Huff, 11 Nev. 26.) It is the duty of the jury to resolve every reasonable doubt in favor of the defendant. They hear the words and observe the manner of the witnesses. Their situation enables them to ascertain with considerable accuracy whether a witness is speaking the truth or uttering a falsehood. Hence, the law has made them the judges of facts, and given them the liberty of- believing or disbelieving all or any portion of the testimony of any witness. But, lest the jury should arrive at an erroneous conclusion upon questions of fact, or the court upon questions of law, an additional guard has been thrown around the defendant in the trial court. If either or both of these errors have occurred at the trial below, that court, having witnessed all the proceedings, and being cognizant of the merits of the case, is permitted to pass upon and correct them.
But, by a wise constitutional provision, the jurisdiction of this court, because, of its situation, has been limited, in criminal eases, to questions of law alone. We can, as a question of law, decide whether or no-t there is any evidence in the record to support every fact that is necessary to constitute the crime of which the defendant has been convicted; but should we pass beyond that limit, we should assume the duties of the trial jury and court below, disregard a constitutional prohibition, and often fall into the error of giving weight and value to false testimony that has been properly considered and rejected by those who alone can judge of its character.
There is very little conflicting testimony in this case. It is undisputed that the appellant, at Halleck station, in Elko county, in this state, 'on the seventh day of June last, ran from Griffin’s saloon to a house belonging to one Hughes, got a shotgun, came back to the saloon, and there stood a short time, four or six feet from and nearly in front of the closed door; when the door was partially opened by deceased, defendant raised his gun and fired, instantly killing the deceased, James Einnerty; that appellant then immediately mounted a horse standing near the lmuse and rode away, carrying the shotgun with him.
*409 There is also uncontradictecl testimony, that prior to the homicide, appellant had been drinking, and one witness testified that he was drunk; but no facts are stated showing the extent of inebriety.
It also appears that appellant and one Webb, a few minutes before the shooting, had a quarrel; that Webb struck appellant several times; that deceased and one Griffin separated them, when all but appellant went into the saloon and remained until the homicide; that appellant, instead of going into the saloon, soon started for Hughes’s house and returned with the shotgun. There is testimony that he appeared excited, and, also, that he did not. Mr. Hatch testified that he hailed him, when going with the gun to the saloon, and advised him to stop, when appellant replied that ‘ he (witness) had better attend to his own business, or he would get a dose.” Witness did not think appellant was much excited. Mr. Griffin testified, that on the same day, a short time before the quarrel between Webb and appellant, he heard the latter say, “he would kill some- -, and he did not care who it was.” It does not appear that either of the parties was armed except appellant.
Every instruction asked by counsel for appellant was given to the jury, who were fully advised by the court as to what constituted the difference between murder of the first and second degree and manslaughter, and also the effect of drunkenness. The homicide was committed about one o’clock p. M., and the upper portion of the door was glass. Appellant and deceased had had no particular difficulty. Upon this evidence, should we consider it, we could not say, as a question of law, that the testimony ivas insufficient to justify a conviction of murder of the first degree.
The judgment and order appealed from are affirmed, and the district court is directed to fix a day for carrying its sentence into execution.