[No. 1674.]

## THE STATE OF NEVADA, RESPONDENT, v. H. C. LAWRENCE, APPELLANT.

1. CRIMINAL LAW—TRIAL—OBJECTIONS TO EVIDENCE—FAILURE TO SPECIFY GROUNDS—FAILURE TO EXCEPT. The overruling of a general objection to evidence, the grounds of which are not specified, and to which ruling no exception is taken, is not error.

2. WITNESSES—IMPEACHMENT—CONVICTION OF CRIME. Where defendant, in a prosecution for felony, offers himself as a witness in his own behalf, convictions of other felonious crimes committed by him may be shown on cross-examination to affect his credibility, although they may not be competent as substantive evidence against him.

3. CRIMINAL LAW—APPEAL—HARMLESS ERROR—ADMISSION OF EVIDENCE. Error in permitting a question to be answered over objection is harmless, where the same question has been previously asked and answered without objection.

4. SAME—ERRORS REVIEWABLE—FAILURE TO OBJECT. The propriety of the admission of evidence, which is not objected to in the lower court, need not be considered on appeal.

5. SAME—MATTERS NOT APPARENT IN RECORD. Alleged errors which do not appear in the bill of exceptions need not be discussed by the supreme court.

APPEAL from the District Court, Churchill County; *B. F. Curler*, Judge.

H. C. Lawrence was convicted of assault with intent to kill, and appeals. **Affirmed.**

The facts sufficiently appear in the opinion.

*B. R. McCabe*, for Appellant:

I. The court erred in permitting the prosecution to attempt to prove the general and specific bad character of the defendant, when the defendant had not put his character either specifically or generally in issue. The defendant went on the stand as a witness in his own behalf. His testimony was confined entirely to the time he resided in this state, about a year and a half. On cross-examination he was asked by counsel for the state the following questions:

"Mr. Pike: How many have you killed altogether in your lifetime, Mr. Lawrence? A. I have not killed any yet, sir. Q. How many have you tried to kill? A. One. Q. Who is that? A. Garrison. Q. Is that the only one? A. Yes, sir; only one I ever had any cause to kill. Q. You have been in

California? Mr. McCabe: That is objected to. The Court: Objection overruled. Mr. Pike: You have been in California? A. Yes, sir. Q. Have you ever been in Northern California? A. No, sir. Q. Never was around Fort Jones? A. No, sir. Q. Fort Bragg? A. No, sir. Q. You have been in Mendocino County? A. No, sir. Q. Ever know a man up there in that country by the name of Fred Heldt? A. No, sir. Q. Never did; are you sure of that? A. I never was up in that part of the country. Q. Did you ever know a man in California by the name of Fred Heldt? A. I do not remember. Mr. McCabe: That is objected to, if your honor please; it is not cross-examination, not relevant to this case. The Court: Objection overruled. Mr. McCabe: Exception, please. Mr. Pike: How long is it since this desire possessed you to kill Mr. Garrison? A. Oh, perhaps a month. Q. Perhaps a month before you undertook to kill him? A. Yes, sir. Q. You had made up your mind to kill him? A. I only made up my mind to kill him the last week. I kept thinking I ought to. Q. What for? A. Because he was working against me. Q. What was he doing against you? A. He intended to kill me. Q. How do you know that? A. Kept telling people that I was tricky. Q. How did you know that he intended to kill you? A. Mary told me so. Q. Who is Mary? A. Mary? That is my old sweetheart. Q. Your old sweetheart? Where is she? A. She was with me. She used to come and see me every day. Q. Where from? A. I used to know her way back in New Hampshire. That is where I first got acquainted with her thirty-five years ago. Q. How long? A. Thirty-five years. Q. Living or dead? A. Living. Certainly, she is living; been right here in jail to see me a thousand times. Q. Your old sweetheart told you that Garrison was going to kill you. A. Yes, sir. Q. Any one else? A. No, sir. Didn't need any one else. Mary always knowed what was going on. She never makes a mistake. Q. What did Mr. Garrison ever say to you about it that led you to believe that he was going to give you any injury? A. Well, Mr. Garrison is pretty cunning. He would not say anything himself. Q. Would not say anything? A. No, he is pretty deep. Q. Did Mary tell you to kill that man Heldt over in

Fort Bragg? A. I never saw a man Heldt. Q. You didn't? A. No, sir. Q. Didn't you kill a man named Heldt over in Mendocino County? Mr. McCabe: That is objected to, if the court please. That is irrelevant. Mr. Pike: I am trying to find out what Mary told him. Mary told him one thing. I want to find—— The Court: Objection overruled. Mr. McCabe: Exception. The Court: Note the exception. Mr. Pike: Did Mary tell you to kill old man Heldt up there in Mendocino County? A. No, sir, I never saw an old man Heldt. Q. Didn't you serve twelve years in Folsom Penitentiary for forging his name to a will? A. No, sir. Q. You didn't? A. No, sir. Q. Did Mary tell you to forge old man Heldt's name to a will for an estate of $50,000 that he had up in the vicinity of Fort Bragg? A. No, sir; I don't know Fort Bragg, nor Mr. Heldt, nor anything else. Q. Do you know where Mendocino County is? A. No, sir; I do not. Q. Do you know where Folsom Penitentiary is? A. Yes, sir; I know where it is. Q. How long did you live there? A. No, sir. Q. You have lived in the Folsom Penitentiary? A. No, sir. Q. Is that your picture? (Handing same to the witness.) Isn't that your picture? A. No, sir; that is not my picture. Q. Is that yours? A. No, sir. Q. It ain't your picture? A. Well, I should hope not. Q. Ain't this your picture, with the head shaved? A. No, I should say not. Q. You deny it? A. Certainly I deny it.

II.   The questions above no doubt were asked with a view to create in the minds of the jurors a prejudice against the defendant. They were not admissible for the purpose of impeaching the defendant's character, either generally or for truth and veracity. They could have no other effect than the dire object of holding him up before the jury as a dangerous criminal whom it was their duty to convict on general principles. How easy it was for the jury to say to themselves: "So I heard." "So-and-so was right when he told me he served a term in the pen." And why would the counsel for the state be permitted to ask these questions? Such questions satisfied and filled those preconceived ideas that were inculcated from the day of his arrest in a rural community by every one from the editor of the little newspaper down to

the boy in the street.    But let me reserve this for oral argument, and cite the honorable court to the law, which is the best argument.  (*State* v. *Huff*, 11 Nev. 17; *People* v. *O'Brien*, 66 Cal. 602; *People* v. *Bishop*, 81 Cal. 113; *People* v. *Wong Ah Leong*, 99 Cal. 440; *People* v. *Crowley*, 100 Cal. 478; *People* v. *Baird*, 104 Cal. 462.)

III.   In this case the defendant admitted the assault, but set up for his defense the plea of insanity.    And, indeed, I think all the actions of the defendant on the 13th day of July, the day of the assault, as shown by the evidence, were those of an insane man.    The prosecution undertook to show, as a motive for the desire of the defendant to kill Garrison, that Lawrence owed Garrison something like $185, and undertook to kill Garrison to liquidate the debt.    Let us go over the route with this man Garrison and see how careful he was to bring his would-be slayer to justice:    "Q. How much did he owe you on the 30th day of July for work?    A. Nineteen dollars.    Q. The day that you received the wound?    A. I believe that it was $19.75.    Q. Had you ever asked him for it?    A. I had not particularly asked him for what he owed me for work.    I asked him for another little bill that he owed me.    Q. What was the other bill that he owed you? A. Sixty-five dollars."    In the very next question he is asked by counsel for the state to state to the jury fully and in detail how he happened to owe this money.    And near the last of the same page he makes the statement:    "Well, he got another hundred somehow.    I got thirty-five dollars of the hundred."    And the next question takes him entirely from the subject until page 22 is reached:    "Q. Now state to the jury how much you ever received out of that $200 certificate of deposit.    A. Thirty-five dollars.    Q. Now state to the jury what, if anything, Mr. Lawrence had told you with relation to the balance of that money due on the certificate of deposit. A. I never heard of it.    I thought it was back there.    I thought there were sixty-five dollars here out of the hundred and the other hundred was still back."    And so it goes. Note the explanation of the witness as to the second hundred dollars.

IV.   The question is, did the prosecution prove a motive

STATE *v.* LAWRENCE. [28th Nev.

for the act? Let us take the evidence, and this is all we can take in this court, for the jury doubtless judged as physi- ognomists, and does not the evidence show that his actions were those of an insane man? (Taylor's Med. Jur. 664.)

*James G. Sweeney*, Attorney-General, for Respondent:

I. The lower court did not err in allowing the district attorney to cross-examine defendant as the record discloses. No person accused of crime can be compelled to testify against himself, nor can any witness be compelled to give evidence which would tend to incriminate him, but these are rights which may be waived, and when a defendant in a criminal action testifies in his own behalf he waives his right and becomes a witness subject to be examined and cross-examined as any other witness. By availing himself of the privilege of testifying in his own behalf, the defendant thereby volun- tarily assumed the character of a witness, and he became subject to every rule adopted by the court for the purpose of cross-examination. (*Keyes* v. *State*, 122 Ind. 527; *Com.* v. *Bonner*, 97 Mass. 587; *Fletcher* v. *State*, 49 Ind. 130; Wig- more on Evidence, vol. 11, pp. 1013–1014; *State* v. *Murphy*, 45 La. Ann. 938; Underhill on Evidence, 497–498, and authori- ties cited; *Bell* v. *State*, 31 Tex. Cr. Rep. 276; *U. S.* v. *Brown*, 40 Fed. 457.)

II. The defendant did not object to answering any of the questions asked by the district attorney on the ground that they would tend to criminate him, and, as the questions put by the district attorney tested his mental condition as to his homicidal tendencies, the defendant having placed in issue his mental condition claiming to be a monomaniac with homicidal tendencies, the questions asked by the district attorney were legitimate questions in cross-examination. The defendant in this case having interposed a plea of insanity, assuming to be a monomaniac with homicidal tend- encies, and having testified in his direct examination that he was under the hallucination that his victim (Garrison) was plotting against him and that he felt it necessary to kill him and put him out of the way, the district attorney in cross- examination was certainly privileged to cross-examine him

at length as to his memory and his homicidal desires and tendencies in order to ascertain whether or not his mind was diseased to the extent that he became a monomaniac with homicidal tendencies, as interposed in his defense, or whether he was simply feigning insanity for the purpose of avoiding punishment for the crime charged.   The questions complained of were clearly relevant to his insanity and were plainly competent. (*State* v. *Tice*, 131 N. Y. 651; *Spies et al.* v. *People*, 122 Ill. 2; Underhill on Evidence, p. 498.)

III.   The jury in the case at bar evidently believed the convincing evidence introduced at the trial that defendant's motive for attempting to kill Garrison was to avoid payment of a debt which was due and owing to Garrison from the defendant and for the purpose of covering up a crime of embezzlement committed against Garrison; whether or not they believed the further theory of the prosecution that, in the event the defendant succeeded in murdering Garrison, he would attempt to forge his will and secure the money of Garrison deposited in the bank in Steelville, Missouri, is immaterial.   The fact remains that the defendant admitted the assault, and, having interposed for his defense the plea of insanity, the jury, under the evidence adduced and the instructions of the court, did not believe him insane and found him guilty.   Even admitting, for the sake of argument, that no motive was shown in the case, it is a well-established principle of law that in criminal cases the absence of any apparent motive for the commission of an offense is only a circumstance to be considered in connection with other evidence of insanity, but it does not of itself prove insanity, as counsel for defendant assumes in his brief. (16 Am. & Eng. Ency. Law, 609, and authorities cited.)

*B. R. McCabe,* for Appellant, in reply:

I.   I wish here only to cite the honorable court to further authorities that have come to my notice since filing the original brief. (*People* v. *Wells*, 100 Cal. 459; *People* v. *Mullings,* 83 Cal. 138; *People* v. *Devine*, 95 Cal. 227; Taylor's Med. Jur. 632-4.)

II.   In a similar case to the one at bar (*Gale* v. *People*, 26

Mich. 161) Judge Cooley, delivering the opinion of the court, says: "A review of the evidence in the case suggests very forcibly that, however full may be- the explanation, a list of questions which assume the existence of damaging facts may be put in such a manner, and with such persistency and show of proof, as to impress a jury that there must be something wrong, even though the prisoner fully denies it, and there is no other evidence. Holding that these questions were erroneous, and that they might, and probably did, prejudice the prisoner, the conviction must be set aside, and a new trial ordered."

By the Court, FITZGERALD, C. J.:

The defendant was convicted in the Second Judicial District Court in and for the County of Churchill of the crime of assault with intent to kill. He made a motion for a new trial. The court denied the motion, and sentenced the defendant to the penitentiary for the period of fourteen years. Defendant appeals to this court from both the order denying his motion for a new trial . and also from the judgment pronounced upon him by the court.

In his bill of exceptions defendant makes four assignments of error; but his counsel, in the brief filed in this court, relies only upon the following: The defendant was a witness in his own behalf. Mr. Pike (assisting the district attorney) was cross-examining the defendant. After some questions the following occurred: "Mr. Pike: Q. You have been in California? Mr. McCabe: That is objected to. The Court: Objection overruled." Up to this point certainly no error was committed by the court. Counsel did not point out or specify any error to the court; neither did he take any exception to the ruling of the court. Mr. Pike proceeded as follows: "Mr. Pike: Q. You have been in California? A. Yes, sir. Q. Have you ever been in Northern California? A. No, sir. Q. Never was around Fort Jones? A. No, sir. Q. Fort Bragg? A. No, sir. Q. You have been in Mendocino County? A. No, sir. Q. Never was in Mendocino County? A. No, sir. Q. Ever know a man up there in that county by the name of Fred Heldt? A. No, sir. Q.

Never did? Are you sure of that? A. I know I was never up in that part of the country. Q. Did you ever know a man in California by the name of Fred Heldt? A. I do not remember. Mr. McCabe (attorney for defendant): That is objected to, if your honor please. It is not cross-examination, not relevant to this case. The Court: Objection overruled. Mr. McCabe: Exception please." As will be seen counsel objected to the foregoing on two grounds: First, that "it was not cross-examination"; and, second, that it was "not relevant to the case." Properly to determine these questions it is necessary to make a brief statement of the condition of the case when the objections were interposed.

The defendant was on trial for an assault with intent to kill. His defense was the plea of insanity. The evidence, when the objections were interposed, had not only tended to show, but, it might perhaps truthfully be said, had shown, that the defendant had requested Mr. Garrison, the man upon whom it was charged the assault had been made, to go with him into the country to aid in the making of a survey of some land; that Mr. Garrison accompanied the defendant, and, when they were out some distance in the country, defendant walked behind Garrison and shot him in the back of the head with a pistol; that Garrison fell to the ground; that defendant went a short distance to a somewhat elevated place, and there stopped and looked back at Garrison; that he saw Garrison rising up from the ground; that defendant returned near Garrison, and fired two more shots at him, these shots emptying defendant's pistol; that Garrison then made some resistance to the attacks of the defendant; that defendant then returned to the town; and that Garrison also made his way back to the town, but by a route different from that taken by the defendant. Under the crime charged, the defense pleaded, and the above-stated conditions of the evidence, we think it cannot be successfully claimed that the evidence to which the objection was made was not proper cross-examination. The defendant had offered himself as a witness in his own behalf; and although it may be true that in his capacity of defendant no other crime than that for which he was undergoing trial could be shown in evidence against

him, yet in his capacity of witness convictions of felonious crimes could be so stated on cross-examination as going to his credibility.

As throwing much light on the doctrine here laid down we cite the following: *Keyes* v. *State*, 122 Ind. 527, 23 N. E. 1097; *Com.* v. *Bonner*, 97 Mass. 587; *Fletcher* v. *State*, 49 Ind. 130, 19 Am. Rep. 673; Wigmore on Evidence, vol. 2, pp. 980–982, 1013, 1018, 1270; *State* v. *Murphy*, 45 La. Ann. 958, 13 South. 229; Underhill on Evidence, 497, 498, and authorities cited; *Bell* v. *State*, 31 Tex. Cr. R. 276, 20 S. W. 549; *U. S.* v. *Brown* (D. C.) 40 Fed. 457; *People* v. *Tice*, 131 N. Y. 651, 30 N. E. 494, 15 L. R. A. 669; *Spies et al.* v. *People*, 122 Ill. 2, 12 N. E. 865, 17 N. E. 898, 3 Am. St. Rep. 320; 14 Am. St. Rep. 480–482; *Cream City Glass Co.* v. *Friedlander* (Wis.) 54 N. W. 28, 21 L. R. A. 135, 36 Am. St. Rep. 895–898. On the first ground assigned we think the court did not commit error. On the second ground of objection, to wit, irrelevancy, it should be kept in mind that the defendant was in a double capacity—that of defendant, and that of witness. As defendant pure and simple, the testimony was, it may be granted for the purpose of this argument, irrelevant, and therefore improper; but as witness it was not so. It was relevant to the question of his credibility—a question that his testifying in his own behalf put in issue before the jury. The cases above cited, and doctrine laid down, likewise dispose of this question adversely to the contention of counsel for the defendant.

Further along in the cross-examination, and after counsel had pursued for a time a different line of interrogation, the following occurred: "Q. Did Mary tell you to kill that man Heldt over in Fort Bragg? A. I never saw a man Heldt. Q. You didn't? A. No, sir. Q. Didn't you kill a man by the name of Heldt over in Mendocino County, California? Mr. McCabe: That is objected to, if the court please. That is irrelevant. Mr. Pike: I am trying to find out what Mary told him. Mary told him one thing. I want to find—— The Court: Objection overruled. Mr. McCabe: Exception. The Court: Note the exception. Mr. Pike: Did Mary tell you to kill old man Heldt up there in Mendocino County? A. No, sir; I never

saw an old man Heldt." It will be observed that the question to which objection was directed was not answered. The question which followed was somewhat different from the question objected to; and, even if it were error to have admitted it over a proper objection, the error would have been harmless, for the same question had previously been asked and answered without objection.

It will also be observed that the answers given to the questions were favorable to the defendant. In this respect the case is not like that of *State* v. *Huff*, 11 Nev. 17, cited by counsel for defendant in support of his position. In that case the defendant was asked upon cross-examination with reference to a number of assaults and batteries, and over the objection of defendant's counsel was allowed to testify that he had committed a number of such offenses, for which he had been convicted. In referring to these questions and answers, the court said: "We cannot doubt that the answers he gave must have excited more or less prejudice against him in his character of defendant in the minds of the jurors who tried him.".

Following the examination last above quoted, counsel for the state asked the defendant a number of questions relative to imprisonment in the Folsom Penitentiary in California. The defendant denied repeatedly that he had ever been so imprisoned. It is contended that this line of examination tended to prejudice the defendant in the minds of the jury. No objection was interposed to this line of examination, and whether or not it would have been error to have permitted it over objection does not require consideration.

There are some other matters claimed as errors by counsel for the defendant in his oral and written arguments, but these, not appearing in the bill of exceptions, need not be discussed here.

There being no error in the judgment or order appealed from, the said judgment and order are affirmed.