## STATE *v.* SOARES

No. 2937

March 31, 1931.                    296 P. 1081.

*William S. Boyle,* for Appellant:

*Gray Mashburn,* Attorney-General; *Wm. J. Forman,* Deputy Attorney-General; *Melvin E. Jepson,* District Attorney, and *A. P. Johnson,* Deputy District Attorney, for the State:

## OPINION

By the Court, COLEMAN, C. J.:

George Soares, alias George Miller, and Dan Brennan were jointly charged by information with the crime of robbery by means of putting the person robbed in fear, and upon the trial were both convicted. A motion for a new trial was filed in behalf of both, upon the hearing of which a new trial was denied Soares and granted as to Brennan.

From the order denying Soares a new trial, and the judgment, an appeal has been taken.

It is insisted that the court erred in denying the motion, for two reasons: (1) Because the verdict is contrary to the evidence, and (2) upon the ground of newly discovered evidence.

The defendant drove up to a service station in Reno between 6:30 and 6:40 p. m. on September 27, 1930, and Brennan, the owner of the car, ordered three gallons of gasoline. Howard Foster, who was in charge of the service station at the time, testified, in substance, that Soares got out of the car and handed him in payment of the gasoline a $1 bill; that he went to the cash register, got the change, and handed it to Soares, who had his right hand in his coat pocket in a menacing position and said to Foster, "Open her up," referring to the cash register; that he opened up the cash register, and just at that moment the headlights of a car which was driving up flashed upon them; that Soares grabbed a $5 bill, got into Brennan's car, and they drove off hurriedly. The defendants admitted buying the gasoline, but gave an entirely different version of the money transaction.

Foster also testified that the occupant of the car which drove up merely inquired for a certain street, and drove off; that he made no statement to the occupant of the car of having been robbed, but immediately telephoned police headquarters of the robbery.

The defendants had been in Reno about a month and had no employment. They had known each other for

a couple of years and had worked in several "clubs" in Salt Lake City for a time. After they left the service station they first visited a gambling resort in Reno, and later drove to Sparks, about three miles distant, where they were arrested and taken back to Reno, and were later formally charged with the crime.

■■ It is very evident that the jury disbelieved the testimony of the defendants and accepted that of Foster. This they had a perfect right to do. No doubt the jury correctly estimated the type of men the defendants were and took into consideration the fact that their liberty was in jeopardy. We have read the testimony carefully. The testimony of Foster, who had held positions with responsible concerns in Reno from time to time, was straightforward and bears the earmarks which justified the jury in accepting it. We have often pointed out that in a criminal case where there is substantial evidence to support the verdict of the jury this court cannot weigh it. State v. Watts, 52 Nev. 453, 290 P. 732; State v. Ryan, 12 Nev. 403, 28 Am. Rep. 802; State v. McGinnis, 6 Nev. 109.

We are now brought to a consideration of the contention that the trial court erred in denying Soares a new trial since newly discovered evidence justified such new trial.

■ The so-called newly discovered evidence is an affidavit of Howard Foster, the prosecuting witness, and two other affidavits which will later be mentioned. Omitting the preliminary portion of Foster's affidavit, it reads:

" * * * That on the night of the robbery affiant knows that Brennan could not see from where the car was situated what was going on and affiant feels and believes that Brennan had nothing to do with the robbery; affiant further believes that the robbery was committed on the spur of the moment by Soares, after he got out of the car."

It will be seen from a reading of this statement that Foster stated nothing in his affidavit but what he "feels" and "believes," except that Brennan could not "on the

night of the robbery" see what was going on. This affidavit is based on the proposition that a robbery was committed, and aside from that it is a statement of mere conclusions, which could not have been properly testified to upon the trial, hence could not be evidence newly discovered or at all. The affiant concedes, however, that there was a robbery. If this be true, and if upon any theory Brennan was not guilty, there was none who could have been guilty but Soares.

The affidavit of Burns is merely to the effect that Foster stated: "Brennan is innocent, Mr. Burns, because the robbery was committed on the spur of the moment by Soares after he got out of the car and it looked to me like Soares was going to pull a trick on me but finding out that he could not get away with it he made a quick grab for the register." This affidavit, presented and relied upon by Soares, certainly fastens the crime upon this appellant, by his own showing.

The other affidavit is by one of the jurors who sat in the case, in which he stated that had he known "that Howard Foster, the chief witness for the prosecution in the above-entitled case, believed Brennan to be innocent, and had affiant known that the robbery was committed on the spur of the moment by Soares after he stepped out of the car, and was not preconceived by both defendants, we would not have voted to convict Dan Brennan."

This affidavit does not aid Soares. That part about Foster's belief in the innocence of Brennan is not competent to be considered, and it is nowhere stated that the juror would not have voted for the conviction of Soares.

A significant thing about this case is that though Brennan testified upon the trial that from where he was at the moment of the alleged holdup he was in full view of the interior of the service station in question and the general vicinity of the cash register, yet on his motion for a new trial he impeached that testimony by presenting the affidavit of Foster, wherein he stated "that on the night of the robbery affiant knows that Brennan could not see from where the car was standing what

was going on" at the time the robbery was committed.

We have carefully read the very elaborate briefs filed in behalf of appellant; but since the affidavits filed fail to show any competent new evidence available, we do not think it necessary to dwell upon the propositions discussed.

In our opinion no injustice has been done the appellant.

The court did not err in denying the motion for a new trial. The order and judgment are affirmed.