# THE STATE OF NEVADA, Respondent, *v.* OWEN CAUDLE BUTNER, Appellant.

## No. 3545

May 10, 1949.                                           206 P.2d 253.

*John R. Ross,* of Carson City, and *Griswold & Vargas,* of Reno, for Appellant.

*Alan Bible,* Attorney General, *Geo. P. Annand* and *Homer Mooney,* Deputy Attorneys General, and *Harold O. Taber,* District Attorney, *John C. Bartlett* and *Gordon R. Thompson,* Deputy District Attorneys, all of Reno, for Respondent.

## OPINION

By the Court, McNAMEE, District Judge:

.Appellant, Owen Caudle Butner, was convicted in the district court of Washoe County of the crime of murder of the first degree. The jury by its verdict fixed the

penalty at death.   Appeal is taken from the judgment and order denying appellant's motion for a new trial.

Conviction herein resulted from appellant's killing of Mildred Butner, his estranged wife, at Reno, Nevada, by shooting her three times with a pistol, on December 30, 1947.

Appellant had married decedent in 1933.   They lived together thereafter, first in Nevada and then in California.   A son was born of this union.   They returned to Nevada in 1941, when appellant accepted a position with the Reno Police Department as patrolman, which he held until August 15, 1947.   While appellant was in Reno, decedent obtained her first divorce from him, but they remarried each other shortly thereafter.   In September 1947, decedent obtained her second divorce from appellant, and on the same day appellant obtained employment as a deputy sheriff of Douglas County, Nevada.   He returned to Reno in October 1947, and did not obtain regular employment again until December 17, 1947, when he went to work for the Mapes Hotel, as floor man.   On December 29, 1947, the day before the fatal shooting, after receiving his pay check for his work at the Mapes, he went to decedent's home on Locust Street, where he was met at the door by Gertie Lou Eaton, a friend of decedent.   While he and Mrs. Eaton were talking outside the door, decedent came to the door, and appellant put his hand inside his coat. Mrs. Eaton warned decedent to close the door, and then asked appellant for the gun.   He refused her, saying that he was going to the edge of town and blow his brains out.   Prior to this, and on September 8, 1947, appellant had stated to decedent's sister that he guessed he would have to kill decedent and then himself.

On the fatal day, December 30, 1947, just before 6 p. m., appellant had a taxi driven by Bob Wiseman, take him past decedent's home.   Since no one appeared to be there, he was driven to the home of Mrs. Knight, decedent's mother, and inquired of her where decedent was.   Upon leaving, he put his arm around Mrs. Knight

and said, three times, "Mother, I hate to do this to you because I love you so much." He then had the taxi take him back to the Locust Street home, where he went into the house and turned on the lights. Just then decedent arrived in another taxi, driven by Jack Watkins. Seeing that the lights in the house were on, she stated she was afraid to go in, but nevertheless she did go in, when Watkins was willing to accompany her. Appellant came from another room into the kitchen, just as they arrived therein, and were setting down their parcels. He endeavored to get decedent to talk to him in private, but she refused and told Watkins not to leave, that she was going back to town with him. Watkins walked out the back door to his cab, followed by decedent and appellant, who was still endeavoring to talk to decedent in private. As decedent was about to return to the house to lock the door, appellant shot her three times, and she fell. Appellant pointed the gun at Watkins, and said, "Roll her over and see if she is dead." Watkins replied that she was, and added, "Don't shoot me. This is a family affair. Put that thing in your pocket and beat it." Appellant put the gun in his pocket, and went back into the house. Appellant then went to Haddock's bar, where he had several drinks and was apprehended by police. He directed the arresting officers to the place where the gun was, and, on the way, inquired about decedent. When told she was dead, he stated, "God, that's too bad, but I had to do it. She was an awfully nice woman. I suppose I will have to take the gas, but I had to do it." At the police station, he was booked and gave the required information without difficulty, and requested that George Vargas be called as his attorney.

It is conceded by appellant that the state successfully proved by competent witnesses that Mildred Butner came to her death as a result of bullet wounds inflicted by appellant. The defense is based on the legal insanity of appellant at the time, and for some time both before

and after, the crime was committed. Appellant contends that the evidence is insufficient to justify a conclusion that the appellant was sane at the time of the commission of the crime. He claims that a review of the record will show that he has proven, by a preponderance of evidence, that he was insane when the shots were fired.

That there was a conflict in the evidence on the issue of insanity cannot be denied. Numerous witnesses, expert and nonexpert, were produced both by appellant and by the state, to prove and disprove the insanity of appellant. The jury by its verdict found that the defendant was sane at the time of the homicide. It is not now the duty of this court to weigh such evidence. State v. Watts, 52 Nev. 453, 290 P. 732; State v. Soares, 53 Nev. 235, 296 P. 1081; State v. McNeil, 53 Nev. 428, 4 P.2d 889; State v. Fisco, 58 Nev. 65, 70 P.2d 1113. The jurisdiction of this court in a criminal case in which the offense charged amounts to a felony is limited to questions of law alone. Constitution of Nevada, Art. VI, sec. 4; State v. Millain, 3 Nev. 409, 467; State v. Mills, 12 Nev. 403; State v. Boyle, 49 Nev. 386, 248 P. 48. Appellant concedes this to be the law, but contends that the conflict on this issue comes within the exception to the general rule set forth in Consolazio v. Summerfield, 54 Nev. 176, 10 P.2d 629, 630, when this court said:

"The general rule * * * is that when the evidence is conflicting and there is substantial evidence to sustain the judgment it will not be disturbed. But there is an exception to the general rule to the effect that where, upon all the evidence, it is clear that a wrong conclusion has been reached, the judgment will be reversed."

It will be noted that the foregoing exception to the general rule was enunciated in a civil case. This court has very carefully guarded and restricted its possible application in criminal cases. State v. Boyle, 49 Nev. 386, 403, 248 P. 48; State v. Van Winkle, 6 Nev. 340;

State v. Buralli, 27 Nev. 41, 71 P. 532. The evidence adduced on the part of the state, through the testimony of expert and lay witnesses, as to the sanity of the defendant, leaves no room for the application of this exception to the general rule in the instant case.

Appellant strongly urges that the trial court in allowing Jack Watkins to testify as to the sanity of appellant committed reversible error, because, if it be conceded that the evidence was substantial as to both sanity and insanity, the consideration by the jury of incompetent testimony on this matter might very well have tipped the scales against appellant's contention.

The record discloses that Jack Watkins had seen appellant only on the day of the homicide, and at that time for a period of from three to eight minutes, being the time when he and decedent encountered appellant in the kitchen of her home, while the three of them walked to his taxi in the front of the home, and until after the shooting took place. This witness was permitted, over appellant's objection, to state that in his opinion appellant was sane at the time of the shooting. On cross-examination, he testified further on this subject, as follows: "I noted at the time of the occurrence that when he pointed the gun at me and told me to roll her over and see if she was dead, that he wasn't drunk, or he wasn't crazy. I mean, he was deliberate and cold.

"Q. Did you form your opinion at that moment? A. Wouldn't you? I thought it was going to be my last one."

■ There is no question in this state but that opinion evidence of a layman or nonexpert as to the sanity or insanity of an accused before or after the time of the alleged crime may properly be received in evidence, provided the witness possesses adequate knowledge, based on an opportunity to observe the conduct of the one whose mental condition is in issue. State v. Lewis 20 Nev. 333, 22 P. 241:

"That such an opportunity (to observe the accused)

is necessary, no one has doubted. The doubt comes only as to the exact phrasing of the test to be applied. A precise definition, which shall be at once both flexible enough to meet various situations and exact enough to be a rule at all, is difficult, if not impossible. It has at any rate not been devised to the satisfaction of all the courts. The truth is that the test should be left in the hands of the trial judge. Neither its exact phrasing, nor its application in a given instance should be made to occupy the time of the highest courts. The attempt to invent an all-sufficient form of words is as inexpedient as it is vain." III Wigmore on Evidence, 3d Ed., paragraph 689 (2).

■ The determination of the qualifications of such lay witnesses in this state is left to the discretion of the trial judge; and where the testimony is admitted, unless it clearly appears that there has been an abuse of that discretion, this court, on appeal, has not interfered. State v. Lewis, supra.

■■ Although Jack Watkins' opportunity for observation of appellant covered a period of only three to eight minutes, it covered that period immediately before, during, and immediately after the shooting. His testimony was positive and clear regarding the mental condition of the accused. It was based upon his own knowledge and impression of the accused's conduct at that time. Where the law allows a witness to testify as to the condition of an accused's mind at times previous and subsequent to the homicide, from impressions made at the time of observation, on the ground that it tends to show his mental condition at the time of the homicide, a fortiori it is proper to allow testimony of such condition existing at the exact time of the homicide, when the same is based on actual observation of the accused at that time. Watkins found himself at the actual time of the homicide in a condition highly tense and precarious to his own personal safety, and which required him to heed every movement, word and gesture of the

accused. The trial judge, in the exercise of his discretion, believed Watkins competent to express his opinion as to the sanity of appellant at the time of the shooting. We are asked to review that discretion. Whether we are compelled to do so under the authority of State v. Lewis, supra, or whether the test of competency should be left entirely in the hands of the trial judge, as suggested by Wigmore, supra, we do not now decide, because we have no hesitation in saying that the trial judge, in our opinion, did not in this instance abuse his discretion.

Our views just expressed are entirely consistent with the opinion in the case of State v. Plunkett, 62 Nev. 258, 265, 142 P.2d 893, 142 P.2d 101, 110, wherein the trial court sustained an objection by the state to a question asked a lay witness as to the mental capacity of the defendant. This court, on appeal, held in that case that there was no improper exercise of discretion by the trial court, and quoted with approval the following language from the case of State v. Lewis, supra:

"The court must be satisfied that the witness has had opportunity, by association and observation, to form an opinion as to the sanity of the person in reference to whom he is to speak; but as to the extent and character of the evidence, no better rule can be established than to leave it within the discretion of the court."

Appellant has cited many cases from other jurisdictions as being in conflict with our opinion just expressed. They are likewise in conflict with the rule in this state as expressed in State v. Lewis, supra, and in State v. Plunkett, supra. At common law, opinions of lay witnesses as to sanity or insanity were received without question. But many of the courts in this country have modified the common law in this respect to such an extent that its application has been materially restricted. Such decisions cited by appellant are for the most part a result of inadvertent departures from the common law, and they make no impression upon us insofar as they

are in conflict with the established law in this state. The rules prevailing in each particular jurisdiction are exhaustively set forth in Wigmore on Evidence, 3d Ed. vol. III, paragraph 689, p. 10, n. 2; vol. VII, paragraphs 1933, 1938 and note. See, also, the text in vol. II paragraph 659.

■ It is urged on this appeal that there was sufficient evidence of appellant's intoxication at the time of the homicide to dispel any element of wilfullness, premeditation, or deliberation required for murder of the first degree, and that this court should modify the judgment by reducing the degree of the crime from murder of the first degree to murder of the second degree. With this we are unable to concur.

■ As with the question of insanity, there was substantial evidence pro and con regarding appellant's state of sobriety at the time the crime was committed. If appellant was under the influence of intoxicating liquor or drugs to any extent at that time, there was adequate evidence for the jury to conclude that appellant was not devoid of his powers of deliberation. A man may be drunk and at the same time be able to deliberate. 15 Am.Jur. 30, paragraph 340, n. 8. Furthermore, appellant admitted that his drinking was his own voluntary act, and the jury was justified in believing from all the evidence that appellant's use of intoxicants before the shooting was to create in him sufficient courage to commit the crime which had been in his mind for more than three months before its occurrence. Intoxication under such circumstances is of no avail even to mitigate the degree of the crime. 15 Am.Jur. 31, n. 15.

Several other alleged errors were specified in appellant's opening brief, but were not argued orally.

▪ ■ Dr. Bromberg, a witness for the defense, after testifying on direct examination as to the accused's mental condition, was asked on cross-examination, "Doctor, in your diagnosis of this fugue, did you know that the defendant, after shooting his wife had disposed of the

gun and after being arrested showed the officers where it was?" Objection was made on the ground that the question was unfair in that the factual disposition of the gun should have been included in the question. We do not agree with this contention. It is conceded that after the homicide appellant deliberately parted with the gun. It is immaterial whether he dropped it in an unconcealed place or secreted it. The pertinent fact is he got rid of the gun, and the verbs "disposed of," "get rid of," "relinquish posession of," or "part with" equally connote his conduct in this respect. The witness was in no way misled by the question. He answered as follows: "I investigated to a degree what happened after the shooting and took that into consideration in making the diagnosis as I did all other actions both before and after."

Appellant contends that the trial court erred in permitting, over objections, certain leading and suggestive questions. We do not deem it necessary to quote the individual questions which form the basis of these objections, because in our opinion they are neither leading nor suggestive.

Exception was noted to the failure of the trial judge to sustain an objection to a question by the state on cross-examination of a defense witness. The objection was not made until after the answer was given, and for the reasons stated in State v. Clarke, 48 Nev. 134, 228 P. 582, this court on appeal will not consider its admissibility.

As no error appears in the record, the judgment and order denying a new trial are affirmed, and the district court is directed to make the proper order for the carrying into effect by the warden of the state prison of the judgment rendered.

BADT and EATHER, JJ., concur.

HORSEY, C. J., being ill, the Governor designated Honorable FRANK MCNAMEE, Judge of the Eighth Judicial District, to sit in his stead.

ON PETITION FOR REHEARING

August 11, 1949.

*Per Curiam:*

**Rehearing denied.**