[No. 1023.]

## THE STATE OF NEVADA, RESPONDENT, *v.* WILLIAM PEARCE, APPELLANT.

GOOD CHARACTER OF DEFENDANT—HOW PROVEN.—When a witness is called to prove the good character of the defendant, his testimony must be confined to the reputation which defendant sustains in the community as to the particular trait of character at issue.

CHARACTER OF DECEASED IN CASES OF HOMICIDE—WHEN IN ISSUE.—The character of the deceased can only be brought in issue where the circumstances are such as to raise a doubt whether the homicide was committed in malice or was prompted by the instinct of self-preservation: *Held*, upon a review of the facts, that no evidence as to the character of the deceased would have justified defendant's action, or had any tendency to reduce the offense.

ARGUMENT OF COUNSEL—ORDER OF.—At the close of the testimony defendant offered to submit the case without argument; the prosecution objected, and the attorney-general opened the case. The defendant's attorney then moved to submit the case. The court denied the motion. Defendant's attorney then moved the court to require the other attorney for the state to argue the case before he made his argument. The court denied the motion. Thereupon defendant's attorney argued the case, and T. H. Wells, attorney for the state, closed the argument: *Held*, that no error occurred prejudicial to defendant.

APPEAL from the District Court of the Second Judicial District, Ormsby County.

The facts appear in the opinion.

*N. Soderberg*, for Appellant:

I. The district court erred in excluding the evidence offered on behalf of defendant touching his general disposition and character for peace and quietness. Such evidence is relevant and important in all criminal cases. It was admissible *in favorem vitæ*, as reflecting upon the probability or improbability of the evidence adduced against him, and also upon the truth or falsity of his defense. (1 Taylor on Ev., sec. 325; *Reg.* v. *Rowton*, 1 Whart. Cr. L., sec. 636.)

Defendant was not limited to proving what people may have said of him; but was entitled to show his character from parties with whom he was acquainted. (*Gandolfo* v. *State*, 11 Ohio St. 114; *State* v. *Lee*, 22 Minn. 407; 1 Phill. on Ev. 177.)

The testimony is to go to the jury and be considered by them in connection with all the other facts and circumstances; and if they believe the accused to be guilty, they must so find, notwithstanding his good character. (*Harrington* v. *State*, 19 Ohio St. 264, 269; *People* v. *Ashe*, 44 Cal. 288; *Lee* v. *State*, 2 Tex. Ct. App. (1877) 338; *Slover* v. *People*, 56 N. Y. 315; *Kistler* v. *State*, 54 Ind. 400; *Carson* v. *State*, 50 Ala. 134; Roscoe's Cr. Law, 4th Am. ed. 96, 97; *Cancemi* v. *People*, 16 N. Y. 501; *State* v. *Henry*, 5 Jones (N. C.), 66.)

II. The court erred in excluding defendant's proffered evidence as to the character of deceased for violence. The evidence of Halsey's character was material and proper to explain the situation of the parties, and their acts and deeds at the time of the difficulty. It was part of the *res gestæ.* (*Monroe* v. *State*, 5 Ga. 85; *Queensbury* v. *State*, 3 Stew. & Port. 308; *Keener* v. *State*, 18 Ga. 194; *Franklin* v. *State*, 29 Ala. 14; *Dukes* v. *State*, 11 Ind. 557; *State* v. *Hicks*, 27 Mo. 588; *Payne* v. *Commonwealth*, 1 Metc. (Ky.) 370; *State* v. *Matthews*, 78 N. C. 523.)

III. The court erred in its rulings relative to the manner of the argument to the jury. (Stat. 1861, 472, sec. 355; *State* v. *Smith*, 10 Nev. 106.)

*M. A. Murphy*, Attorney-General, for Respondent:

I. Evidence of good character must be restricted to the traits of character in issue, and should be confined to a reasonable period of time before the commission of the offense for which the party is on trial. (3 Greenl. Ev., secs. 25, 26.) A witness who is called to testify as to a defendant's character can not give the results of his own experience or observation. Nor can he express his own opinion, but must confine himself to general reputation. (1 Whart. Ev., secs. 49, 563; 1 Whart. Cr. Law, 636; Fisher's Dig. Cr. Law, 573; *Regina* v. *Rowton*, 2 L. & C. Cr. Cases, 520.)

II. There was no error committed by the court in refusing to hear evidence as to the character of the deceased, because it was no part of the *res gestæ*. (*Commonwealth* v. *Hilliard*, 2 Gray, 294; *Commonwealth* v. *Mead*, 12 Id. 167; *Wise*

v. *State*, 2 Kans. 419; *State* v. *Tilly*, 3 Ired. L. 424; 1 vol. Whart. Cr. Law, sec. 641; 3 Greenl. on Ev., sec. 27; Heard Lead. Cr. Cas., 2 vol., 355.)

By the Court, Hawley, J.:

The defendant, Pearce, was convicted of murder in the second degree, for the killing of Samuel Halsey, at Sweetwater, in Esmeralda county, on the twenty-fourth of November, 1878, and sentenced to the state prison for a term of twenty years.

We are of opinion that the errors assigned, upon which appellant seeks a reversal, are untenable.

1. The court did not err in excluding the questions asked of the witnesses, Curran and Wilson, as to their individual knowledge of the good character and disposition of the defendant for peace and quietness. There was no offer made to prove defendant's general character in this respect.

The rule of law, applicable to this case, requires that when a witness is called upon to prove the good character of the defendant, his testimony should be confined to the reputation which defendant sustains in the community as to the particular trait of character at issue. Evidence of defendant's character means evidence of his general reputation. This inquiry is usually made for the purpose of ascertaining the tendency and disposition of the defendant's mind with reference to the probabilities of his committing, or abstaining from committing, the crime charged against him. The proper way of getting at this disposition of his mind is by introducing evidence of his general character founded on his general reputation in the neighborhood where he lives. Witnesses who are acquainted with this reputation are permitted to give negative testimony to the effect that they have never heard defendant's character called in question; because, as has been frequently said, the mere fact that no unfavorable comments were ever made against him in the community where he resides and is well known, would authorize a witness to say that his general character was good. Some judges have expressed the opinion that "the best character is that which is the least talked of." But

witnesses are not, as a general rule, authorized to give the results of their own personal experience and observation, formed from sources not common to the acquaintances of the defendant, and having no reference to his general character in the community.

Taylor, in his work on evidence, says: "The inquiry must be confined to the general character of the prisoner, and must not condescend to particular facts; for, although the common reputation in which a person is held in society may be undeserved, and the evidence in support of it must, from its very nature, be indefinite, some inference, varying in degree according to circumstances, may still fairly be drawn from it; since it is not probable that a man who has uniformly sustained a character for honesty or humanity will forfeit that character by the commission of a dishonest or cruel act. But the mere proof of isolated facts can afford no such presumption. 'None are all evil,' and the most consummate villain may be able to prove that on some occasions he has acted with humanity, fairness, or honor." (1 Taylor on Ev., sec. 326.)

2. The form of the question asked by defendant's counsel relative to the character of the deceased, whether "he was a man of peaceable and quiet disposition of mind, or whether he was a quarrelsome, violent, or dangerous man," was, perhaps, subject to the same objection. It would have permitted the witness to answer as to isolated facts, instead of being confined to his character as known to the defendant, or to the community at large. We are, however, satisfied, that no testimony had been given in the case which authorized the introduction of any evidence in relation to the character of the deceased. The character of the deceased can only be brought in issue where the circumstances are such as to raise a doubt whether the homicide was committed in malice or was prompted by the instinct of self-preservation. It may, in such cases, always be inquired into, by the defendant, for the purpose of enabling the jury to determine the real motive which actuated the defendant, or the reasonableness of his fears that his own life was in danger. Every case must, in this respect, be gauged with

reference to its own surroundings; for, as is stated by Bishop: "There can be no general rule on the subject other than the one which rejects the evidence of character and of general bad conduct, except where the foundation for it is specially laid in the facts, real or assumed, of the particular case. * * * A single incident of apparently trivial import might render this evidence properly admissible in the particular instance, while, in other circumstances, many such incidents might, together, fail to work out the like result. In this nature of things, the evidence must fit the individual case, as the garments fit the individual back." (2 Bish. Cr. Pr., sec. 629.)

All the circumstances, testified to by the respective witnesses, clearly show that defendant had no ground whatever upon which to base any reasonable belief that he was in any danger of his life, or of receiving any bodily harm, and that he did not act under any such belief.

The homicide occurred at a public house, and was witnessed by half a dozen or more persons. The deceased had been drinking freely and was somewhat out of humor. He and others were in the bar-room, and had been playing games of dice for money. The defendant was winning, and the deceased was losing at the game. Deceased accused defendant of charging him with stealing twenty-five cents, which defendant denied. Opprobrious epithets were used by deceased. He refused to drink with defendant, and during the controversy about the money slapped him in the face. Defendant threw a tumbler, which hit deceased in the face. Deceased then, in the language of one of the witnesses, "walked rather slowly and retreated toward the front door," and went out of the house, remarking to defendant, "I won't fight you in your own house; but come outside and I'll fight you." The defendant—then behind the counter at the bar—took his pistol in his hand and started towards the front door. Lusignau, one of the persons present in the room, caught hold of him, when he was two or three feet from the door, and tried to prevent him from shooting. Two shots were fired by him at the deceased. The witnesses vary in their testimony, as to the interval between the shots,

from two seconds to five minutes. When the first shot was fired the deceased was outside of the house, and distant fifteen or twenty feet from the front door, and walking towards it. Defendant was still held by Lusignau inside of the house, three feet from the front door. This shot went through the door and struck a triangle near the house. Defendant then released himself from Lusignau, still remaining at the same place, and, as stated by one of the witnesses, "he rested the pistol on his left arm, and fired with the right hand," and aimed, as testified to by all the witnesses, except the defendant, deliberately at the deceased, remarking, "I'll shoot him," and "Oh, no, I won't shoot!"

At the time of the second shot the deceased was coming towards the front door, and was "so near the door-jamb that when the shot was fired he eased himself in the door and fell." The deceased had not exhibited any weapon before or at the time of the difficulty, and none was found upon his person.

It is true that the defendant, testifying in his own behalf, stated that he knew deceased had carried a sheath-knife, and that at the time of the shooting he was afraid that deceased would cut him with a knife.

If he had stopped with this declaration, it might be admitted that there would have been some evidence in the case tending to show that the question of deceased's character for violence was material, in order to explain the action of defendant; but he did not pretend that he fired the shots because he believed that he was in danger. On the contrary, he expressly declares that the shots were fired accidentally. "I can say positively that both shots were not done intentionally by me. Nary shot, sir!"

It is apparent, from this statement of the facts, that no evidence as to the character of the deceased, whether good or bad, would have justified (or explained) defendant's action, or had any tendency to reduce the offense.

3. The record shows that at the close of the testimony defendant's counsel proposed to submit the case to the jury without argument. The prosecution objected, and the attorney-general opened the case for the state. At the close

of this argument, "N. Soderberg, Esq., the only attorney for the defendant, * * * moved the court to submit said cause upon the testimony, the argument for the prosecution already made, and instructions to the jury. The court denied the motion, and defendant's counsel excepted. Thereupon defendant's counsel moved the court to require Thomas H. Wells, the other attorney for the prosecution, to proceed to argue the cause to the jury * * * before any argument made by counsel for defendant, with the understanding that either one of the attorneys for the state might make the closing argument to the jury. The court denied the motion, * * * to which ruling defendant duly excepted. Thereupon said counsel for defendant argued the case on the part of the defendant, and was followed by Thomas H. Wells, Esq., who made the closing argument to the jury."

There was no error prejudicial to defendant in these rulings of the court. (*State* v. *Pierce,* 8 Nev. 296; *State* v. *Stewart,* 9 Id. 121; *State* v. *Smith,* 10 Id. 106.)

The judgment of the district court is affirmed.

BEATTY, C. J., concurring:

In ruling upon the offer of defendant's counsel to submit the cause to the jury upon the evidence, the opening argument of the attorney-general, and the instructions to be given to the jury, and in holding that unless counsel for defendant addressed the jury before a further argument on the part of the state, he could not address them at all, the district court violated the rule laid down in *State* v. *Smith,* 10 Nev. 113, and if the error in these rulings had been taken advantage of in a proper manner, it would, in my opinion, have necessitated a reversal of the case. Counsel for defendant, if he thought the case was unfairly or insufficiently opened by the attorney-general, should have insisted on his offer to submit it without argument on his part, and should have positively declined to make an argument until after the argument of the other attorney for the state. Then, if he had demanded the privilege of a reply, and had been refused, the action of the court would have entitled him to a

reversal of the judgment. But, instead of pursuing this course, he replied to the attorney-general, and this entitled the state to a closing argument.

For this reason, and for the reasons stated by Justice Hawley in discussing the other assignments of error, I concur in the order of affirmance.

LEONARD, J., concurring: I concur.