[Crim. No. 298. Second Appellate District.—November 25, 1913.]

## THE PEOPLE, Respondent, v. AVALON CRAMLEY, Appellant.

CRIMINAL LAW—HOMICIDE—SUFFICIENCY OF EVIDENCE.—In this prosecution for homicide the evidence is sufficient to sustain the conviction of manslaughter, both as showing that a crime was committed and that the defendant was the perpetrator thereof.

ID.—REASONABLE DOUBT—SUFFICIENCY OF INSTRUCTIONS.—An instruction that "if, by the evidence adduced in a criminal action, there is raised in the minds of the jury, upon any hypothesis reasonably consistent with the evidence, a reasonable doubt as to any fact necessary to a conviction, that doubt must be resolved in favor of the defendant," is not erroneous in failing to set out or specify what facts are necessary to warrant a conviction, when the charge as contained in the information is read to the jury in other instructions given by the court, and the jury is told that every material allegation contained in the information is required to be established by proof beyond a reasonable doubt, before a verdict of guilty can be rendered.

ID.—PRESUMPTION OF INNOCENCE—REFUSAL OF INSTRUCTIONS.—The refusal of the court to instruct the jury that "the presumption of innocence is one to which the law is partial," and "that where conflicting presumptions supervene, the presumption of innocence must

be deemed superior," is not error, if the jury is further instructed
that the presumption of innocence must be overcome by the prose-
cution to the extent that all material facts should be established
to the satisfaction of the jury and beyond a reasonable doubt, and
the evidence discloses no situation where there arises a conflict of
presumptions.

ID.—INSTRUCTIONS TO JURY—USE OF DIFFERENT LANGUAGE BY COURT.—
The fact that the court may employ different language in its in-
structions from that which the defendant may desire shall be used
in presenting the same matter to the jury, is not good ground for
objection.

ID.—MANSLAUGHTER—PROPRIETY OF INSTRUCTION DEFINING.—Where the
accused in a homicide case pleads not guilty and seeks to show from
the circumstances surrounding the death that the deceased destroyed
himself, the court may, of its own motion, properly read to the
jury instructions defining the crime of manslaughter; and the de-
fendant cannot complain of a verdict of manslaughter, which is more
favorable to him than one which the jury might well have returned
under the evidence.

ID.—MOTIVE FOR HOMICIDE—INSTRUCTIONS WHERE EVIDENCE DIRECT.—
Where much of the evidence in a homicide case is direct and not by
way of circumstance, it would not be proper to tell the jury that,
under the evidence, proof of express motive is controlling.

ID.—CROSS-EXAMINATION OF WITNESS—STRIKING OUT ANSWER—HARM-
LESS ERROR.—The accused cannot predicate prejudicial error upon
the ruling of the court in striking out an answer to a question on
cross-examination, if the witness is afterward allowed to answer in
regard to the subject of inquiry and thereby give the defendant
the benefit of such testimony.

ID.—MISCONDUCT OF COUNSEL — ABSENCE OF OBJECTION—REVIEW ON
APPEAL.—An alleged improper statement by the district attorney
in a homicide trial cannot be complained of on appeal, if the de-
fendant neither objected to the statement nor asked the court to
strike it from the record.

ID.—IMPROPER QUESTION TO WITNESS—REPRIMANDING ATTORNEY.—It is
improper in a homicide case for counsel for the defendant to ask
the wife of the deceased on cross-examination if she was arrested
about three weeks before for shoplifting, and the court properly
reprimands him for asking it.

ID.—MISCONDUCT OF COURT—COMMENT ON ATTORNEY'S INTELLIGENCE.—
A statement by the court to counsel for the defendant, "I am going
to rule in your favor if you have sense enough to keep quiet," is
not prejudicial error. The matter of the interchange of courtesies
between the judge on the bench and counsel at the bar has been
said never to come within purview of a proper subject for review,

unless it appears reasonably that the jury has been affected in a way prejudicial to the rights of the defendant.

ID.—VIEW OF PREMISES—EVIDENCE OF CHANGE IN CONDITION.—After the jury in a homicide case, pursuant to a request joined in by the defendant, has viewed the premises where the crime was committed, the prosecution may be allowed to account for any change in their condition, between their state as shown by the evidence and their appearance at the time the jury inspected them.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Frank G. Finlayson, Judge.

The facts are stated in the opinion of the court.

Chas. S. McKelvey, and W. H. Stevens, for Appellant.

U. S. Webb, Attorney-General, and George Beebe, Deputy Attorney-General, for Respondent.

JAMES, J.—Defendant was charged with having, on the twenty-third day of November, 1912, killed and murdered one Joseph W. Fear. Upon trial being had he was found guilty of the crime of manslaughter. Thereafter a motion for a new trial was made and denied, and judgment followed. This appeal was then taken from the order denying the motion for a new trial and from the judgment.

On the day of the alleged homicide deceased was visiting at the house of one Nellie Greaney at Pasadena. Mrs. Greaney occupied apartments consisting of three rooms. The wife of deceased, during the absence of her husband, had resided with Mrs. Greaney, but at the time Fear met his death his wife had gone to the county of San Bernardino. It may be gathered from the evidence that Fear had left Pasadena sometime before the twenty-third day of November, intending to go to Arizona, but had turned back after reaching Johannesburg. He did not find his wife at home when he returned, but called upon and conversed with Nellie Greaney, being well acquainted with that person. The defendant was also an acquaintance of both Nellie Greaney and Fear. On the evening of November 23d, the defendant and Nellie Greaney came to the apartments about 6 o'clock, and shortly thereafter Fear came in. Nellie Greaney testified that Fear had some whiskey and that

they all partook of it, and that Fear seated himself in a chair, while the defendant remained standing. She testified further that she retired into the bath room, which was immediately adjoining the room in which the two men were, in order to take some medicine, and that she remained there for perhaps fifteen minutes. She was very indefinite in her statement as to the approximate time that she remained in the bath room, and also uncertain as to whether she left the door which connected the two rooms open or not. When she did return to the room where she had left the men, defendant was not there, and she observed Fear in the act of falling from his chair and bleeding profusely. It developed that he had been cut in the neck, the instrument used leaving a knife-like wound. The jugular vein had been severed and Fear died within a few minutes without speaking. A brother of defendant, who was employed in a restaurant at Pasadena, testified that defendant on the evening in question entered the restaurant and asked whether the witness had any money. This brother replied that he had one dollar and fifty cents, when defendant said: ''Give it to me, I have cut Fear and am going to beat it.'' On cross-examination counsel for defendant endeavored to secure from the witness a qualification of the statement as to what defendant had there said, and was successful to the extent that the witness admitted that defendant might have said that Fear had been cut, without stating that he (defendant) had done the cutting. Defendant did immediately leave Pasadena and went to the home of his father at Chino, where he was arrested on the day following. Nellie Greaney testified also that the men had not quarreled on the evening of the alleged homicide, and that she had heard no sound of struggle in the apartment while she was in the bath room. No knife of any kind was found upon or about the deceased's body. Police officers who came to the scene immediately upon being notified of the tragedy, found no weapons about the place, although some search was made. At a subsequent time a large revolver was found under a settee, of a kind like one which Nellie Greaney testified the deceased had carried. A great many empty bottles were found standing about the place, indicating that the inmates were in the habit of partaking freely of liquor. In one of the pockets of deceased's clothing was found a bottle of whiskey and in another

pocket a bottle of wine. Nellie Greaney gave testimony to the effect that deceased was of a melancholy temperament and that he seemed despondent because his wife had gone away. Briefly, this statement embraces the material testimony as to the facts upon which the jury founded its verdict, and it must be said that the evidence was sufficient to sustain the conviction, both as showing that a crime had been committed and that defendant was the perpetrator thereof.

A great many alleged errors occurring during the course of the trial are assigned as grounds for a reversal of the order and judgment. Among other instructions the trial judge gave the following: ''If, by the evidence adduced in a criminal action, there is raised in the minds of the jury, upon any hypothesis reasonably consistent with the evidence, a reasonable doubt as to any fact necessary to a conviction, that doubt must be resolved in. favor of the defendant.'' It is complained that this instruction was incomplete in that it did not set out or specify what facts were necessary to warrant a conviction. The charge as contained in the information was read to the jury in other instructions given by the court, and the jury was told that every material allegation contained in the information was required to be established by the proof beyond a reasonable doubt, before a verdict of guilty could be rendered. Considering these instructions in connection with the instruction to which criticism is pointed, no error appears.

The alleged error arising upon the failure of the court to give the instruction offered by defendant to the effect that ''the presumption of innocence is one to which the law is partial,'' and ''that where conflicting presumptions supervene, the presumption of innocence must be deemed superior,'' must be construed in a similar light. The offered instruction was taken from a standard text-book and no fault can be found with the statement of the law therein contained, but the instruction as offered was lengthy and considered in its entire substance was argumentative, and might well have been refused on that ground. But the court very fairly and fully covered the matters sought to be impressed upon the jury by instructing in positive terms that the presumption of innocence must be overcome by the prosecution to the extent that all material facts should be established to the satisfaction of the jury and beyond a reasonable doubt. Further, the evi-

dence disclosed no situation where there would arise a conflict of presumptions, and hence it was not important to defendant's rights to point out that the presumption of innocence would override those of lesser degree.

The proposition that the jury should be satisfied beyond a reasonable doubt and to a moral certainty that the death of Fear was not ''occasioned by natural causes, by accident, nor by the act of deceased himself,'' as set forth in an instruction offered by defendant and refused, was fully and carefully covered by the instruction of the trial judge, No. XVII. Because the court may employ different language in its instructions from that which defendant may desire shall be used in presenting the same matter to the jury, is not good ground for objection, and the complaint here rests upon no other ground.

The court of its own motion read to the jury certain instructions defining the crime of manslaughter. This course appellant asserts constituted prejudicial error. The decision of the case of *People* v. *Huntington,* 138 Cal. 261, [70 Pac. 284], is cited in support of that contention. The facts of the case of *People* v. *Huntington,* were very different in character from those presented here. In the Huntington case the accused was charged with the murder of a young woman upon whom it was claimed he had committed an abortion. The defense was that the defendant did not commit the abortion, but treated the deceased for some disease and that she had died under an operation, ''probably from the effects of an anaesthetic.'' The trial judge in that case injected into it a new theory and one wholly without the contentions or claims of the prosecution, when he instructed the jury that if they found that defendant was treating the deceased for some ailment and that he so treated her ''without due caution or circumspection,'' they might find him guilty of manslaughter. In the light of the facts and the contentions made by the people and defendant at that trial, the error of the court becomes apparent. Not so here. The defendant stated upon his plea that he was not guilty and sought to have it appear that the circumstances surrounding the death of Fear indicated that the latter had destroyed himself. The jury did not so construe the evidence, and having determined that Fear was unlawfully killed by the defendant, they were justified, and it was their duty

to determine the degree of the crime; and upon this subject they were entitled to have stated the law defining the crime of manslaughter. Why should defendant complain because the verdict was more favorable to him than one which the jury might well have returned under the evidence? In the case of *People* v. *Muhlner,* 115 Cal. 303, [47 Pac. 128], the decision shows that the superior court granted to the defendant, charged with murder and convicted of manslaughter, a new trial for reasons identical with those urged on behalf of appellant here. The supreme court reversed that order and held that the conviction was without error. The last mentioned case is cited and affirmed in *People* v. *Coulter,* 145 Cal. 66, [78 Pac. 348.]

Again, appellant complains because the court refused an instruction touching the matter of motive for the commission of the offense, and particularly because of the refusal to instruct that "it is in cases of proof by circumstantial evidence that the motive often becomes not only material but controlling, and in such cases the facts from which motive may be established must be proved." It is a matter for comment that counsel for appellant could not have gleaned from the five typewritten pages covered by the one instruction on the subject of motive, which was given by the trial judge, enough to comprehend so much as was pertinent of the idea which they desired to have stated in the brief four lines of the refused instruction. Moreover, it would not have been proper to have told the jury that under the evidence in this case, much of which was direct and not by way of circumstance, that proof of express motive was controlling.

Contentions are made that in other particulars the charge to the jury contained erroneous statements of the law; also that the court erred in refusing other instructions offered. These contentions appear to be without merit. The trial judge gave very full instructions and fairly advised the jury upon all the propositions of law material to the case.

Appellant complains that the court erred in striking out an answer of the witness Nellie Greaney, elicited on cross-examination and in which the witness related the subject of a conversation that had occurred between her and deceased on the evening before the occurrence of the alleged homicide. This testimony was brought out in aid of the theory of defend-

ant that Fear had committed suicide, in that it tended to show
that he was despondent over the fact that his wife had gone
away.   There would be merit in the contention of appellant
did it not appear that the witness had referred to a day ante-
rior to that as to which she had been examined in chief.   The
particular answer was  properly stricken out as not coming
within the limits of the rule of strict cross-examination, but
there is a stronger reason why no claim of prejudicial error
can be predicated upon the ruling of the court.   The witness
was subsequently allowed to answer fully as to having had
substantially the same conversation with Fear on the next day,
that is, the day of the alleged homicide.   If this testimony was
entitled to any weight as illustrating the state of mind of de-
ceased, the defendant was given the benefit of it.

Questions asked of witness John Richardson as to interroga-
tories which he had put to Nellie Greaney shortly after the
alleged homicide, were proper to be asked for the limited pur-
pose which the court allowed them.   The jury was specially
instructed as to that matter.

Prejudicial misconduct of the district attorney is alleged:
The statement complained of and referred to in the brief of
counsel, where the deputy district attorney announced that
he would be surprised if a brother of defendant answered
"no" to a question asked for the purpose of showing conduct
and statements inconsistent with the testimony given by him
at the trial, was neither objected to as constituting miscon-
duct, nor was the court asked to strike it from the record.   No
foundation to predicate error in such a case is shown.   (*Peo-
ple* v. *Shears,* 133 Cal. 159, [65 Pac. 295] ; *People* v. *Warr,*
22 Cal. App. 663, [136 Pac. 304].)

That the trial judge acted with bias which opposed the right
of defendant to a fair trial, is an accusation made but not
sustained by the record.   When Mrs. Fear, the wife of de-
ceased, was testifying, counsel for defendant asked her on
cross-examination this question: "Mrs. Fear, are you the same
Grace Fear that was arrested in Long Beach about three weeks
ago for shoplifting?"   This question was improper to be
asked, and the court was altogether justified, when sustaining
an objection thereto, in adding: "and counsel is reprimanded
for asking the question."   Again, when defendant's counsel
expressed a desire to make a statement in argument of a mat-

ter then being presented, the trial judge said: "I am going to rule in your favor if you have sense enough to keep quiet"; following which remark counsel said: "I desire also, if the court is going to give his reasons, if the court will give his reason for telling me I have no sense." Then came this response from the bench: "Perhaps it would be too long to give the reasons. Proceed." Counsel states that the tone in which the remarks were uttered cannot be represented in the record. Neither is the attitude and demeanor which counsel may have assumed toward the court so represented. But there is nothing in the comment of the court, drastic as it may have been, that can be said to have prejudiced defendant's case in the eyes of the jury. The ruling of the court made at the time the words excepted to were uttered was in defendant's favor, and the most that the jury could have reasonably inferred would have been that in the opinion of the judge the defendant's counsel was deficient in intelligence or understanding. It cannot be assumed that this intimation prejudiced the jury against defendant, for it could reasonably have had the contrary effect. The decision of the court in the case of *People* v. *MacDonald,* 16 Cal. App. Dec. 974, (now pending before the supreme court on rehearing),* and cited by appellant, does not furnish an argument to sustain the claim of prejudice as here advanced. In the MacDonald case the criticism of this court was that the trial judge in reprimanding the counsel for defendant also gave character to the girl then being examined, which must have impressed the jury and added to the weight of the testimony she had given. This a trial judge may not do. The contention that the judge was guilty of prejudicial conduct in the trial of this case has no such ground to support it. The matter of the interchange of courtesies between the judge on the bench and counsel at the bar has been said never to come within purview of a proper subject for review, unless it appears reasonably that the jury have been affected in a way prejudicial to the rights of the defendant. (*People* v. *Modina,* 146 Cal. 142 [79 Pac. 842]; *People* v. *Casselman,* 10 Cal. App. 234, [101 Pac. 693].)

The objection that it was improper to allow the witness Ross to testify in rebuttal as to his having cleaned the rooms where

---

*The supreme court on March 30, 1914, rendered its decision affirming the judgment of conviction in this case. Its opinion is reported in 167 Cal. —, [140 Pac. 256]

the tragedy occurred after the day of the alleged homicide, possesses no merit. The defendant had joined in a request that the jury be permitted to view the premises, and after this view had been had the prosecution was very properly permitted to show what had been done in the rooms after the twenty-third day of November, in order to account for any change in their condition between their state as shown by the evidence and their appearance at the time the jury inspected them.

The record exhibits a case where the defendant has had a very fair trial and where the evidence fully supports his conviction.

The judgment and order are affirmed.

Conrey, P. J., and Shaw, J., concurred.