## STATE v. BOYLE

### No. 2727

July 24, 1926.                    248 P. 48.

1. WITNESSES.
     Ruling on objection to defendant's cross-examination of witness called by state, but only interrogated as to his name and residence, *held* not prejudicial.

2. WITNESSES.
     Range of cross-examination should be limited to subject matter inquired into on direct examination.

3. WITNESSES.
     Wide range of cross - examination should ordinarily be allowed to test witness' motives, interest, animus, and accuracy.

4. CRIMINAL LAW—SUSTAINING OBJECTION TO DEFENDANT'S CROSS-EXAMINATION OF WITNESSES AFFECTING PARTICULAR OCCURRENCE BECAUSE OF CONFUSION OF DATE AND DAY OF WEEK INVOLVED IN QUESTION, AND REMARK OF COURT IN THAT CONNECTION, HELD NOT PREJUDICIAL.
     Sustaining objection to defendant's cross-examination of witness as to how close he was to automobile, which he testified to have seen on particular date and day of week, on ground that date named was not on day of week mentioned, and court's remark in connection therewith, *held* not prejudicial.

5. CRIMINAL LAW.
     In prosecution for bank robbery, in which sheriff who arrested defendant was permitted to testify respecting conversation had with defendant while in jail, evidence *held* to show absence of inducement, rendering conversation admissible.

6. CRIMINAL LAW—EVIDENCE THAT SHERIFF ADVISED DEFENDANT TO "MAKE A CLEAN BREAST OF IT ALL" HELD NOT PREJUDICIAL.
     In prosecution for bank robbery in which sheriff testified

to conversation with defendant while in jail, evidence that on previous day he told defendant the best thing was to "make a clean breast of it all" *held* not prejudicial.

7. WITNESSES.

Cross-examination of witnesses who had testified as to defendant's honesty, integrity, truth, and veracity as to whether they had heard of certain prior conduct of defendant *held* proper.

8. WITNESSES.

That cross-examination of defendant's character witnesses related to alleged misconduct at distant points *held* not to make it objectionable.

9. CRIMINAL LAW—IN PROSECUTION FOR BANK ROBBERY, EXCLUSION OF QUESTIONS AFFECTING DEFENDANT'S INDUSTRY HELD NOT REVERSIBLE ERROR.

In prosecution for bank robbery, where it was shown that defendant had spent considerable money following date of robbery, exclusion of questions asked witnesses affecting defendant's reputation for industry, if improper, *held* not reversible error, in view of defendant's own testimony.

10. CRIMINAL LAW.

Testimony of character witnesses for defendant should be confined to his reputation for particular trait of character in issue.

11. CRIMINAL LAW.

Court's admonition to defendant's counsel to cease his bulldozing tactics and behave himself as a gentleman toward witnesses *held* not shown by record to have been unjustified.

12. CRIMINAL LAW.

Every presumption is in favor of propriety of court's action.

13. WITNESSES.

Questions affecting conversation between witness and sheriff in sheriff's office, and conduct of sheriff, adduced in rebuttal of inferences left by defendant that witness was taken to office with ulterior motive, *held* properly allowed.

14. CRIMINAL LAW.

Ground of objection that question asked witness called for conclusion cannot be first assigned on appeal.

15. CRIMINAL LAW.

In prosecution for bank robbery, instruction as to jury's right to convict on circumstantial evidence *held* proper.

16. CRIMINAL LAW.

Instruction to convict notwithstanding good reputation, if guilt was shown beyond a reasonable doubt, *held* not objectionable as disparaging evidence of good character.

17. CRIMINAL LAW.

Instruction that opinions of individual witnesses as to defendant's character should not be considered for purpose of proving existence of, or character of, his general reputation *held* proper.

18. CRIMINAL LAW — DISTRICT ATTORNEY'S ARGUMENT, AFFECTING INFERENCES TO BE DRAWN FROM RECITAL OF POOR CHARACTER IN DEFENDANT'S ARMY DISCHARGE PAPERS, HELD NOT PREJUDICIAL MISCONDUCT.

> In prosecution for bank robbery, where defendant's honorable discharge from army was admitted in evidence, argument of district attorney affecting inferences to be drawn from recital of poor character in such discharge *held* not prejudicial misconduct.

19. CRIMINAL LAW.

> For misconduct of counsel to constitute ground for reversal, request for instruction to disregard must have been made and refused at trial.

20. ROBBERY.

> Evidence *held* to sustain conviction for bank robbery.

21. CRIMINAL LAW.

> Under Const., art. 6, sec. 4, and Rev. Laws, sec. 7287, evidence cannot be weighed by supreme court, if there is substantial evidence to support verdict.

See (1–3, 7, 8, 13) 40 Cyc. p. 2409, n. 70; p. 2481, n. 64; p. 2497, n. 52; p. 2501, n. 94; p. 2525, n. 19; (4–6, 9–12, 14–19, 21) 16 C. J. sec. 1124, p. 582, n. 24; sec. 1512, p. 734, n. 20; sec. 1688, p. 726, n. 49; sec. 2381, p. 980, n. 87; sec. 2382, p. 981, n. 96; sec. 2434, p. 1010, n. 14; 17 C. J. sec. 3331, p. 58, n. 27; sec. 3336, p. 72, n. 62; sec. 3462, p. 170, n. 14; sec. 3560, p. 214, n. 31; sec. 3593, p. 255, n. 52; sec. 3637, p. 295, n. 63; sec. 3638, p. 298, n. 21; sec. 3679, p. 333, n. 95; (20) 34 Cyc. p. 1808, n. 78.

APPEAL from Second Judicial District Court, Washoe County; *Geo. A. Bartlett,* Judge.

D. M. Boyle was convicted of bank robbery, and he appeals. **Affirmed.**

*McCarran & Mashburn,* for Appellant:

Limits of cross-examination are largely discretionary. Reasonable exercise of this discretion is always allowed. The Ottawa, 3 Wall. 268; Underhill, Crim. Evi. (2d ed.), secs. 219, 221.

Admission by accused to officer must be without any threat, coercion, intimidation or hope of reward. Prisoner should be cautioned anything he says may be used against him. Rex. v. Griffin, R. & R. C. C. 151; Ammons v. State, 18 L. R. A. (N.S.), 766; Coleman v. State, 87 Ala. 14. Advice to accused by officer that it would be better if he confesses, vitiates confession. 2 Wharton, Crim. Evi., sec. 951. Slight inducement is

sufficient to render confession involuntary. Idem., sec. 649. Burden is on state to prove confession voluntary. Idem. sec. 622.

Character evidence may not be rebutted by series of independent facts. 1 Wharton, sec. 61; State v. Pearce, 15 Nev. 188. Rumors and gossip are not reputation. Underhill, sec. 81; Dave v. State, 22 Ala. 23. Evidence as to character is limited to community where defendant lives. 11 Wigmore, Evi., sec. 1615; Griffin v. State, 14 Ohio St. 55. Evidence of conduct merely immoral but not unlawful is not admissible on cross-examination. 2 Wharton, sec. 487; Chamberlyne, Modern Law of Evi., sec. 3315. In larceny, honesty is relevant trait; sobriety is not. Idem., sec. 3299. Evidence of good character should be allowed to go to jury without disparagement by court. Underhill, p. 144. See severe criticism of asking about rumors, 2 Wigmore, sec. 1611.

Statute defines reasonable doubt. Rev. Laws, 7164. No other definition may be given. Rev. Laws, 7165; State v. Streeter, 20 Nev. 404.

Appeal of district attorney to ex-service and business men to consider matters within their own personal knowledge but not in evidence was error. He may not bring into case indirectly or by innuendo matters not in testimony. State v. Petty, 32 Nev. 393; Prosecutor must be fair. State v. Scott, 37 Nev. 432. Reference to tong wars when there was nothing about them in evidence was improper, and mere reprimand of counsel and admonition to jury do not always cure injury. State v. Jon, 46 Nev. 418.

Identification witness must have opportunity for observation; tenacity of memory; ability to make allowance for change of place, time and conditions; freedom from bias; absence of fancied resemblance or mistake. 2 Wharton, secs. 806, 807, 934.

*M. A. Diskin,* Attorney-General; *Wm. Forman,* Deputy Attorney-General; *L. D. Summerfield,* District Attorney; and *H. L. Heward,* Deputy District Attorney, for Respondent:

Cross-examination should be confined to matters

brought out on direct. 40 Cyc. 2501; Nash v. McNamara, 30 Nev. 114.

Asking officer whether he held out any inducement or made any threat as preparatory to introduction of confession is proper and not leading, suggestive, or calling for conclusion. State v. Newton, 70 P. 31. Opposing counsel had right to cross-examine before admission was introduced. Telling accused it would be better for him to make clean breast of it does not vitiate confession in this state of advanced legal thought and common sense, though appellant cites authorities from jurisdictions where rule-of-thumb procedure prevails. State v. Jon, 46 Nev. 418; State v. Mircovich, 35 Nev. 485.

Integrity includes honesty, truth and veracity. On cross-examination character witness may be asked as to specific reports concerning traits of character involved, if they have tendency to establish bad reputation. People v. Burk, 122 P. 435. Witness' credibility may be tested on cross-examination by questions as to particular acts of, or rumors concerning accused inconsistent with reputation witness attributes to him. State v. Sella, 41 Nev. 113. Reputation in other communities is admissible. Idem. Industry is not trait involved in robbery. Evidence is limited to traits involved. 16 C. J. 582; State v. Pearce, 15 Nev. 188.

Burden is on party claiming error in conduct of court. 17 C. J. 213. If court unfairly criticized counsel, it is as fair to presume jury reacted in his favor as against him. People v. Cramley, 138 P. 123.

Instructions complained of correctly state law and have been adjudicated. 3 Randall's Instructions to Juries, 2254, 2258; State v. Harris, 65 P. 774; May v. People, 6 P. 816; State v. Huber, 38 Nev. 253.

Matters of general public information and known history may be referred to in argument. 16 C. J. 899. Cause will not be reversed for improper remarks unless prejudicial. 17 C. J. 298; People v. Scott, 141 P. 945; Rev. Laws, 7469.

# OPINION

By the Court, COLEMAN, C. J.:

The defendant was convicted of bank robbery, and has appealed from an order denying his motion for a new trial, and from the judgment. Such facts as may be necessary will be stated in disposing of each point urged.

1-3. The first error assigned goes to the ruling of the trial court upon an objection to certain questions asked G. K. Collins on cross-examination. The state called Mr. Collins, and asked him only two questions, viz. what his name was, and where he resided. After the witness had answered a few questions, on cross-examination he was asked if he had ever seen the clerk at the Golden Hotel in Reno prior to registering at the hotel, whether any one was with him when he registered, and some other questions in no way pertaining to the matter concerning which he was inquired of on direct examination. While this court has repeatedly held that the range of cross-examination should be limited to the subject matter inquired into on direct examination (Buckley v. Buckley, 12 Nev. 423; Nash v. McNamara, 30 Nev. 144, 93 P. 405, 16 L. R. A. [N. S.] 168, 133 Am. St. Rep. 694), we think this statement of the law should be construed in the light of the facts of the particular cases in which the statement was made. The fundamental theory justifying cross-examination, as observed in the very able work on the law of evidence by Dean Wigmore, is that a witness on his direct examination discloses but a part of the facts necessary to be considered in reaching a proper evaluation of his testimony. As that learned author observes, the facts suppressed or undeveloped may be of two sorts: (a) The remaining and unqualified circumstances of the subject of testimony, as known by the witness; and (b) the facts which diminish and impeach the personal trustworthiness of the witness. 3 Wigmore on Evidence (2d ed.), sec. 1368. As to the first classification, it is clear that the court

did not abuse its discretion, since the questions asked did not relate to the subject matter covered on direct examination. As to the second class, while the extent of the examination is largely in the discretion of the court, a wide range should ordinarily be allowed to test the witness' motives, interest, and animus, and generally to test the value of his evidence for accuracy. In the instant case, however, there was no prejudice done the defendant. The mere fact that the witness bore a particular name, and that he was a resident of Lida, Nevada, could in no way, so far as it appears from the record, prejudice the defendant, no matter how hostile he might have been toward the defendant. But Collins was called as a witness for the defendant, and testified while so on the stand to the identical facts he testified to when called on behalf of the state. His testimony demonstrates not only that he was not hostile toward the defendant, but that he was chiefly relied upon to establish the innocence of the defendant, and was very friendly toward him. The defendant was in no way prejudiced.

4. It is contended that the court erred in sustaining an objection made by the district attorney to a question asked one Lockridge, a witness on behalf of the state, on cross-examination. This witness had testified on direct examination that he saw a certain automobile parked on Eleventh Street, Sparks, Nevada, on Saturday, March 31, 1925, and had described the car and the action of the man in it, whom he identified while on the witness stand as G. K. Collins. He had testified very positively that the day of the week was Saturday. We quote from the evidence:

"Q. Now, was the 31st of March Saturday at all? Don't you know that the 31st of March was Wednesday?

"Mr. Heward: Both of you are wrong. It was on Tuesday.

"Mr. McCarran: Q. All right. On Tuesday, Tuesday. If the 31st of March was a Tuesday, you are all wrong on your calculations, aren't you, Mr. Lockridge? A. Only to the 31st of March.

"Q. Only to the 31st of March. Well, if you do not know that it was a Tuesday, and you state positively it was a Saturday, how do you know it was the 31st of March at all? A. Because that was the day the bank was robbed.   *   *   *

"Mr. McCarran: Q. When this car that stood out there on this Saturday that you speak about was parked on Eleventh Street, you were not closer to the car than across the street, were you?

"Mr. Summerfield: Object to that as assuming a state of facts not in evidence. This has already been shown now not to have been on a Saturday, but on a Tuesday."

In this connection it is also said that the court committed error in making the observation that he thought it would be better to avoid confusion by directing the attention of the witness to the date "instead of to the wrong day, which he says it was." We do not think the court committed prejudicial error. When Mr. Heward suggested that the 31st was on Tuesday, both counsel and the witness apparently accepted the statement as correct, and the witness then pinned the incident to the 31st, the day of the robbery. In either event, the main purpose of the question was to establish the fact that the witness was not closer to the car than across the street at the time he saw it. That phase of the question was open to such further inquiry as was deemed necessary—the day of the week on which the car was seen was a mere detail. Furthermore, the defendant gave testimony showing that the 31st of March was on Tuesday. The defendant suffered no prejudice.

5. It is next contended that the court erred in overruling an objection to a question asked W. B. Mercer, a witness on behalf of the state, on direct examination. Mr. Mercer was sheriff of Esmeralda County. The defendant had been arrested, and placed in the county jail on the day previous to the conversation of which the witness was testifying. At the time the defendant was placed in the jail, the witness told him that he had been arrested for the Sparks bank robbery, and the best

thing for the defendant to do "would be to make a clean breast of it all." What further, if anything, was said at that time about the robbery does not appear. Concerning a conversation between the witness and the defendant on the morning of July 3, the day after the arrest, we find the following testimony by Mercer:

"Mr. Heward: Q. Sheriff, I believe you testified that you had a conversation with the defendant down in the jail on the morning of July 3, 1925. Is that correct? A. Yes, sir.

"Q. At that time did you hold out any inducements to this defendant?

"Mr. McCarran: One moment, if the court please. That is leading and suggestive, argumentative, calls for the conclusion of the witness.

"Mr. Summerfield: It is a type of question where you can ask for conclusions, and have to.

"The Court: Yes, in laying the foundation. The objection is overruled.

"A. I did not.

"Mr. Heward: Q. Did you make any threats to him?

"Mr. McCarran: The same objection, if the court please.

"The Court: The same ruling.

"Mr. Heward: Q. Did you use any force or violence to or toward the defendant? A. I did not.

"Q. Did you make any promises to him? A. No, sir.

"Q. State what his appearance was as to being calm and composed or otherwise? A. He was calm.

"Q. Would you read me next the last question that I asked just prior to recess?

"The reporter read the question referred to as follows:

" 'Q. What did the defendant, Boyle, first say to you?'

"Mr. McCarran: That is objected to, if the court please, on all the grounds stated.

"The Court: Do you want that question in the form it is now?

"Mr. Heward: Well, I will ask the question outright:

"Q. Just state what the conversation was between

yourself and the defendant, Dudley M. Boyle, at the time and place I have heretofore indicated?

"Mr. McCarran: It is objected to as incompetent, immaterial, and irrelevant.

"The Court: The objection is overruled.

"Mr. McCarran: I save an exception.

"A. Mr. Boyle asked me if he could see me a minute. I told him that he could. I stepped back in the jail, and Mr. Box went on out. Mr. Boyle says, 'Bill, I have learned a good lesson. I will stop drinking, and I will leave the country if you will assist me out of this trouble.'

"Mr. Heward: My question was broad enough to cover the entire conversation, so just go ahead, sheriff. A. That is about all was said. There was a little hesitation, and I got up and walked out. I beg your pardon: There was—I told him that Sheriff Hillhouse had a good deal of evidence against him, and among the evidence he knew about the one dollar bills that he paid his room rent with. And he says, 'I can make an excuse for having those one dollar bills.' And I says, 'What do you expect me to tell Sheriff Hillhouse when he arrives this morning?' He says, 'Tell him that you made a mistake and got the wrong man.' He says, 'This may hurt you for a while, but it will wear off.'"

As to the contention that the question called for the conclusion of the witness, we need only say that no exception was taken to the ruling of the court. Furthermore, it affirmatively appears that no inducement was held out to the defendant to make the statement which was made. He opened up the subject himself, and volunteered the statement. State v. Mircovich, 35 Nev. 485, 310 P. 765.

6. As to the statement on the previous day by the sheriff that the best thing for the defendant to do was to "make a clean breast of it all," it was not prejudicial to the defendant. State v. Jon, 46 Nev. 418, 211 P. 676, 217 P. 587, 30 A. L. R. 1443.

7. The next alleged error relied upon is the ruling of

the court upon defendant's objections to questions asked by the district attorney on cross-examination of certain of defendant's witnesses. These witnesses had testified on direct examination as to the honesty, integrity, truth, and veracity of the defendant in Esmeralda County, Nevada, in which defendant resided. They were asked on cross-examination such questions as these:

"Did you ever hear that the defendant, Dudley Boyle, got himself into trouble with the university authorities while at the University of Nevada by reason of his getting intoxicated?"

"Did you ever hear that during the year 1924 the defendant was accused of burglarizing McCaffery's Chili Parlor in Goldfield, Nevada, securing money from a slot machine, a watch, a stick pin and a pen?"

The witnesses had testified on direct examination by counsel for the defendant that the defendant's reputation for honesty, integrity, truth, and veracity in Goldfield, Esmeralda County, Nevada, was good.

The question presented was settled by this court in the case of State v. Sella, 41 Nev. 113, 168 P. 278, in an opinion by McCARRAN, C. J., wherein the question was considered at length and determined adversely to the contention now made. In the opinion in the case last mentioned the writer alludes to a Missouri case in which the defendant was on trial for murder, and that a character witness in his behalf was properly cross-examined as to whether he heard that the defendant had kept an unlawful dive, and if he had heard that he had sold liquor illegally, and of various other disreputable transactions of the defendant. The opinion then quotes approvingly from the Missouri case as follows:

"It is settled law that, when a witness is called to sustain or attack the reputation of another witness, the opposite party may cross-examine him liberally as to his means of knowledge, and test his own truthfulness, and it is largely a matter of discretion with the court how far such an examination shall be allowed."

See, also, State v. Presta, 108 Wash, 256, 183 P. 112.

8. The fact that some of the questions on cross-examination of the character witnesses pertained to alleged misconduct at points distant from Goldfield did not make them objectionable. State v. Sella, supra. The ruling was right.

9. It is next contended that the court erred in sustaining an objection to questions asked certain witnesses as to the defendant's general reputation for industry. The state had introduced evidence tending to show that at a time subsequent to the date of the robbery of the Sparks bank the defendant had spent considerable money, and it is the theory of the defendant that the testimony offered tended to rebut any presumption arising from such testimony prejudicial to the defendant.

10. The rule of law applicable to the situation presented was stated by this court in State v. Pearce, 15 Nev. 188, where it was stated that, when witnesses are called to prove the good character of the defendant, the testimony should be confined to the reputation which the defendant enjoyed as to the particular trait of character in issue. This is the well-recognized rule. 16 C. J. 582.

The reputation of the defendant for industry was not involved in the crime of robbery. But, had the court erred in its ruling, we think it was cured by the fact that, when the defendant was on the stand, he gave testimony as to his various employments over a period of eight or ten years, and of his earnings, which was not disputed by the state. State v. Johnny, 29 Nev. 203, 87 P. 3.

11. It is strenuously insisted that the trial judge was guilty of gross misconduct prejudicial to the defendant. The alleged misconduct consisted of remarks of the judge which were addressed to counsel for the defendant wherein he admonished counsel to cease his bulldozing tactics, and that he behave himself as a gentleman.

12. While a trial judge should at all times exhibit

such restraint and dignity as becomes one occupying a high position, and scrupulously avoid utterances and demeanor which. may tend to prejudice a defendant on trial, we cannot say that the presiding judge was not justified in his utterances and action. In the instant case the language of the attorney seems inoffensive, but the manner of counsel cannot be gleaned from the record. The same may be said of the language of the court. In fact, the remarks of the court were relative to counsel's manner, and not to his language. When counsel took an exception, the court stated:

"I do not like your manner, Mr. McCarran. You can enter all the exceptions you please, but you will be gentlemanly to this witness and to all other witnesses."

Every presumption is in favor of the propriety of the action of the court. Error is never presumed, and must be made to affirmatively appear. It does not appear from the record that the court was not justified in its action. People v. Cramley, 23 Cal. App. 340, 138 P. 123–127.

13, 14. The next assigned error goes to the ruling of the court on an objection to a question asked the witness West on rebuttal by the district attorney as to whether the witness had had a conversation with the sheriff in his office, and what the conduct of the sheriff was as to being courteous. The question was objected to on the ground that it called for an argumentative answer, was immaterial and irrelevant, and not proper rebuttal. We do not think the objections made are good. Counsel for the defendant had sought to show that some ulterior motive prompted the taking of the witness to the sheriff's office to inquire of him relative to certain matters. The purpose of the inquiry on rebuttal was to dissipate such an idea. The answer was not argumentative, and was material. The contention that the question called for a conclusion of the witness comes now for the first time, and is too late.

15. It is contended that the court erred in giving instruction No. 12, which reads as follows:

"The court instructs the jury that the state is not

required to prove all of the facts by direct and positive
evidence. It may prove a part by circumstantial evidence. Circumstantial evidence is legal and competent
evidence in criminal cases, and, where it is all consistent
with the hypothesis of the guilt of the person accused
of crime, and is not consistent with the hypothesis of
his innocence, and where it establishes his guilt beyond
a reasonable doubt—where all the evidence can be reconciled with the assumption of his guilt, and cannot be
reconciled with the assumption of his innocence, and
produces in the minds of the jury an abiding conviction
of the truth of the charge—it is the imperative duty of
the jury, under the law and under their several oaths,
to render a verdict finding him guilty, and they would
violate their oaths if they should fail to do so just as
they would if it were all direct and positive evidence.
Nor is it necessary that they should be absolutely certain of his guilt. This is impossible, in the nature of
things, and the law does not require it. If it did, few
crimes, perhaps, would be punished. An abiding conviction of the truth of the charge, therefore, satisfies
the law in this respect. But, before returning a verdict
of guilty in any criminal case, the jury should, after a
consideration of all the evidence, have an abiding conviction of the truth of the charge. And if in this case,
gentlemen, the evidence, all considered, appears to your
minds to be consistent with the hypothesis that the
defendant is guilty of the charge, and inconsistent with
the hypothesis that he is innocent of it, and you feel an
abiding conviction of the truth of the charge, though
not absolutely certain, you will fail in your duty, and
violate your oath, if you do not return a verdict declaring him guilty. But if, on the other hand, the whole
evidence in the case, as you view it, is just as consistent
with the hypothesis of his innocence as with the
hypothesis of his guilt, or, if you do not feel an abiding
conviction of the truth of the charge, or entertain a
reasonable doubt, resting upon the unsatisfactory character of the evidence or for any other reason growing

out of the evidence in the case to establish his guilt, your duty is just as imperative to acquit him."

Counsel attack the instruction in general terms, and then' say that the worst feature of the instruction is that it also purports to instruct the jury as to reasonable doubt, but mistakes the law on this point, in that the statutory definition of reasonable doubt is not given. We think counsel is in error. The court had in a previous instruction charged the jury on reasonable doubt in the language of the statute, and the instruction in question is in no way in conflict with that instruction, but in harmony with it. It is apparent that the sole purpose of the instruction was to advise the jury that they might convict on circumstantial evidence as well as on positive evidence under the conditions named in the instruction. The instruction is sound in law and proper under the testimony. It was approved in State v. Harris, 25 Wash. 416, 65 P. 774, and in 3 Randall on Instructions to Juries, p. 2254.

16. It is next asserted that the court erred in giving instruction No. 20, which reads as follows:

"The court instructs the jury that the defendant has introduced evidence of his good reputation for truth and veracity, honesty and integrity. This is as proper for you to consider as any other fact in the case, but the rule of law is that, if the jury, upon consideration of all the evidence in the case, are satisfied beyond a reasonable doubt of the guilt of the defendant, they must so find, notwithstanding his good reputation."

The objection to the instruction is that it disparages the evidence as to the good character of the defendant. We do not so interpret the instruction. To the contrary, it expressly states that such evidence should receive as much consideration as any other evidence. This instruction was approved in May v. People, 8 Colo. 210, 6 P. 816-823; 3 Randall's Instructions to Juries, p. 2258.

17. It is also contended that the court erred in giving an instruction, which reads:

"The court instructs the jury that, while evidence of

the general reputation of the defendant in and about the neighborhood in which he lived at or about the time of the commission of the alleged offense is admissible, and is a circumstance to be considered by the jury in connection with all the other facts of the case, the opinion or opinions of individual witnesses as to the character of the defendant are not to be considered for the purpose of proving the existence of or the character of his general reputation, and in this case evidence of the character last mentioned should not be considered by the jury in determining any issue of this case."

This instruction was approved by this court in State v. Huber, 38 Nev. 253, 148 P. 562; 3 Randall's Instructions to Juries, p. 2263. No error was committed.

18. It is next contended that the district attorney was guilty of prejudicial misconduct during his closing argument to the jury. The argument was relative to the defendant's discharge from the army. It purported to be an honorable discharge, and reads in part as follows:

"This is to certify that Douglas M. Boyle (875077) private first class aviation section, Signal Res. Corps, as a testimonial of honest and faithful service, is hereby honorably discharged from the military service of the United States.   *   *   *"

On the enlistment record of the discharge there is, among other notations, the following: "Character: Poor."

The portion of the argument complained of is as follows:

"You men who have seen service, who know the ratings on these certificates, the four ratings of excellent, very good, good, and, at the bottom of the list, 'Poor,' can appreciate the full import of this certificate, and I will say to you that we will throw the friends of Boyle out of this case, we will discard the testimony of the sheriff's office in Goldfield, and we will take what has been written by the United States government as to this man's character—that it is poor. You gentlemen are entitled to examine this certificate. I am going to

hand it to you, and particularly ask you ex-service men to read into that that which you know is there.

"Mr. McCarran: One moment, if the court please. I take an exception to that remark as an attempt to influence certain members of the jury by reason of their military service. We especially refer to the ex-service men. I assign it as misconduct, and take an exception to it now.

"The Court: The record will show your exception. You may proceed with the argument.

"Mr. Summerfield: I also appeal to you business men who can read any record between the lines, to you fathers of service men, to any of you who know anything about the service of this country, as you are entitled in any case to bring into the case your ordinary knowledge about the affairs of this government.

"Mr. McCarran: One moment, if the court please. I regret to have to interrupt Mr. Summerfield, but under the ruling of our supreme court—

"Mr. Summerfield: Take your exception without argument.

"Mr. McCarran: I must draw his attention to the particular part of his argument. I therefore now assign it as misconduct, and take an exception to that remark referring to the ex-service men and the fathers of ex-service men as an attempt on the part of the prosecution to arouse passion and prejudice in the members of this jury, not borne out by the record in the case.

"The Court: The record carries your remarks for whatever they may be worth. You may proceed with the argument."

19. We think counsel's contention has no basis to sustain it. That the point now made might be sustained, if well founded, it was necessary that a request be made at the time that the court instruct the jury to disregard such remarks, and refused to do so. 16 C. J. 915; State v. Hunter, 48 Nev. 358, 367, 232 P. 778, 235 P. 645. No such request was made. The discharge was admitted in evidence without restriction, and the jury had a right to consider it for any purpose material to the case, and

counsel for the state had the right to discuss it, or any fair inference which might be drawn from it, and to call upon the jury to consider it to such extent. Counsel say that the appeal to the business men, to the ex-service men, and to the others on the jury who know anything about service to their country "to bring into the case" their "ordinary knowledge," and particularly the statement, "I do not wonder, gentlemen of the jury, that the shoe pinches on that argument," were all glaring misstatements of the law as to what jurors may consider in arriving at their verdict.

It is very evident that the district attorney sought to make an appeal to every class represented on the jury to apply their everyday experiences to the phase of the case under discussion for the purpose of enabling them to reach an accurate conclusion. We do not think any other inference can be properly or fairly drawn from the argument, and the jurors are certainly entitled to apply their experiences in daily life in enabling them to reach a fair and impartial conclusion as to the merits of the case. No prejudicial error appears.

20, 21. It is asserted that the verdict is not supported by the evidence. Article 6, sec. 4, of our constitution, and section 7287, Rev. Laws, are to the effect that appeals to the supreme court in criminal cases can be taken on questions of law only. These provisions simply mean that, if there is substantial evidence to support the verdict, the evidence will not be weighed by this court. This matter was considered at some length by GARBER, J., in State v. Van Winkle, 6 Nev. 340–350, at the conclusion of which he states:

"But that the legal sufficiency of the evidence adduced to sustain the issue or to establish any essential fact is a question of law and not of fact; and wherever it is so light and inconclusive that no rational, well-constructed mind can infer from it the fact which it is offered to establish, it is the duty of the court, according to circumstances, either to reject it as inadmissible or to instruct the jury that there is no evidence before them to warrant their finding the fact thus attempted to be proved.

According to this view, we have jurisdiction—all the evidence being embodied in the bill of exceptions or affidavits—assuming all facts of which there is legal evidence, and drawing all conclusions which can be fairly and logically drawn in support of the verdict or decision—to decide, as a question of law, whether the evidence is sufficient to sustain such verdict or decision in a criminal case."

This view has been stated repeatedly as the law of this state. State v. Buralli, 27 Nev. 41, 71 P. 532.

We would be justified in disposing of this point by merely saying there is sufficient evidence to justify the verdict. The fact is the evidence overwhelmingly supports the verdict. No other verdict could be reasonably accounted for under the evidence. Three of the employees of the bank positively identified the defendant as the robber, and others were of the opinion that he was the guilty party. The circumstances in the case support the verdict. The description given of the robber by the bank employees the morning of the robbery was so accurate that the deputy sheriff in Goldfield on the evening of the robbery told the defendant that the description fitted him, or words to that effect. Sheriff Mercer, who arrested the defendant, testified to a statement made to him by the defendant which was substantially an admission of his guilt. Of course, the defendant contradicted Mercer, and also denied his guilt. He testified, as did Collins, that he left Reno about 7 o'clock the morning of the robbery—two hours before the robbery—and that he was at the Silverado Mine near Sweetwater at a time which would have made it physically impossible for him to have been in Sparks at the time of the robbery. The latter event is testified to by another witness also. His testimony, however, shows an element of great weakness. Two witnesses testified to seeing the defendant in Sparks three or four days before the robbery, and one of them testified that he inquired if the men at the shops had yet been paid. There is evidence that Collins was seen in Sparks on

the morning of the robbery between about 7:15 and 9 o'clock. A stronger case is hardly imaginable.

Judgment affirmed.

SANDERS and DUCKER, JJ., concur.

ON PETITION FOR REHEARING

October 4, 1926.

*Per Curiam:*

Rehearing denied.